**Richard C. GARAY, Ind. & as President—Bexar County Nage, Appellant,**

v.

**COUNTY OF BEXAR, et al., Appellees.**

**No. 04–90–00113–CV.**

Court of Appeals of Texas, San Antonio.

April 24, 1991.

Rehearing Denied May 20, 1991.

Ricardo Cavazos, San Antonio, for appellant.

Ricardo J. Navarro and Victoria Guerra, Asst. Crim. Dist. Attys., Civ. Section, San Antonio, for appellees.

Before REEVES, C.J., and CHAPA and CARR, JJ.

## OPINION

REEVES, Chief Justice.

This is an appeal from a District Court order upholding the decisions of the Civil

Service Commission to affirm the suspension and subsequent termination of appellant's employment and the commission's finding that the Sheriff's actions did not violate the Whistle Blower's Act.

Appellant was employed by Bexar County as a nurse at the Medical/Psychiatric Department of the County Adult Detention Center. During the course of his employment, he received information that an inmate was in possession of a loaded gun during her jail confinement. After learning of this, appellant verified the information through law enforcement reports and a second-hand source.

Appellant and a friend, Ms. Gonzales obtained a copy of the detainee's police record from the San Antonio Police Department. Next, they went to the Sheriff's Department and requested the inmate's office report. This report was obtained directly from Sheriff Copeland. However, the Sheriff refused to allow appellant to examine the entire report. Appellant inquired about the inmate having a weapon in her possession while in detention only to receive a reprimand from the Sheriff. The Sheriff responded in what appellant considered to be a harsh and abusive manner. In response, appellant contacted a news reporter, Paul Thompson. Appellant's story was printed in the San Antonio Express News on March 12, 1987. That same day appellant attempted to report to work but was denied entrance into the jail. Upon learning that appellant was the source of the news article revealing the detainee's identity and medical condition, the Sheriff confiscated appellant's security pass.

Appellant was temporarily transferred to work at the Bexar County Juvenile Detention Center where he did not need a security pass to enter his assigned worksite. Soon thereafter, he was suspended without pay for 15 days for releasing privileged information acquired as a result of his employment as a nurse in the Medical/Psychiatric Department of the County Adult Detention Center. Following his suspension appellant was unable to regain security clearance from the Sheriff. Subsequently, appellant was terminated by his supervisor, Dr. Sparks.

### Substantial Evidence

■ Appellant contends that at the time of the commission's orders there was not any evidence of a substantial nature to reasonably support them. Appeal from a Civil Service Commission decision is governed by the substantial evidence rule. *Heard v. Incalcaterra*, 702 S.W.2d 272, 275 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).

■ Application of the substantial evidence rule is well settled. The appellant is permitted to introduce evidence at a trial de novo so that the trial court can determine, whether there was at the commission hearing substantial evidence to support the order. *Kavanagh v. Holcombe*, 312 S.W.2d 399, 403 (Tex.Civ.App.—Houston 1958, writ ref'd n.r.e.). The reviewing court may neither substitute its judgment for that of the agency on controverted issues of fact, nor may it set aside the agency's order because the evidence did not compel the result reached by the agency. *Texas State Board of Dental Examiners v. Sizemore*, 759 S.W.2d 114, 116 (Tex.1988); *Trapp v. Shell Oil Co.*, 145 Tex. 323, 198 S.W.2d 424, 436 (1946). The resolution of factual conflicts and ambiguities is the province of the administrative body. The aim of the substantial evidence rule is to protect that function. *Firemen's & Policemen's Civil Service Commission v. Brinkmeyer*, 662 S.W.2d 953, 956 (Tex.1984). In its review the trial court need only consider the evidence introduced at the trial de novo relevant to whether the commission acted arbitrarily and without regard for the facts. *Trapp v. Shell Oil Co.*, 145 Tex. 323, 198 S.W.2d at 441; *Cusson v. Firemen's & Policemen's Civil Service Commission*, 524 S.W.2d 88, 90 (Tex.Civ.App.—San Antonio 1975, no writ).

The record indicates that some of the information released to the media by appellant was available to the public in law enforcement reports. Specifically, a San Antonio Police Department Offense Report and the Bexar County Sheriff's Depart-

ment Report of the incident. The police report contained the detainee's name and the charges against her. The Sheriff's report stated that she was found with a loaded gun in her possession while confined at the detention center.

Dr. Sparks suspended appellant for violating regulations established to protect the confidentiality of detainees under his authority as the physician for the detention center. The regulations prevented any disclosure of medical information about a detainee without written authority of the detainee.[1] It is the policy of Dr. Sparks that a detainee be given an examination upon entry in the detention center. The newspaper article stated that when the detainee was brought in she was "completely stoned", ... "that she was in such bad physical state that five hours went by before she had slept it off", and "something like twenty people were endangered because of the oversight, *including medical personnel who examined her.*" Dr. Sparks testified that he searched the medical record and could not find where the detainee had given written consent to release this information. Appellant denied making the disclosure as to the medical personnel examining the detainee. Dr. Sparks contends the examination of the detainee, while she was in an unconscious state by one of his medical staff established a physician-patient relationship. TEX.R.CIV.EVID. 509 provides, in part:

(a) Definitions.

(1) A "patient" means any person who consults or is seen by a physician to receive medical care ...;

(3) A communication is "confidential" if not intended to be disclosed to third persons other than those present to further the interest of the patient in the consultation, examination, or interview, or persons reasonably necessary for the transmission of the communication, or persons who are participating in the diagnosis and treatment under the direction of the physician, including members of the patient's family.

(b) General Rule of Privilege.

(1) Confidential communications between a physician and a patient, relative to or in connection with any professional services rendered by a physician to the patient are privileged and may not be disclosed.

■■■■ The physician-patient relationship is contractual and wholly voluntary, created by agreement, express or implied. *Childs v. Weis,* 440 S.W.2d 104, 106, 107 (Tex.Civ.App.—Dallas 1969, no writ). Although the detainee could not in her state of unconsciousness agree to a medical examination, it was the responsibility of the authority that placed her in confinement to see that her condition did not merit medical treatment and it was for this reason that medical personnel examined her. Having been examined by medical personnel we conclude that a physician-patient relationship was established. But in any event the finding that appellant violated the rules of the medical department and the detention center is sufficient to uphold the fifteen day suspension.

■■■■ At the end of appellant's suspension, he attempted to return to work in the detention center. Sheriff Copeland refused to restore appellant's security pass. Dr. Sparks terminated appellant because he could not gain access to his assigned work place. The Sheriff had exclusive control over the detention center and the facilities located therein. *See* LOCAL GOV'T CODE § 351.041 (Vernon 1988). If appellant could not return to his work place, Dr. Sparks had no other alternative than to terminate his appointment. We find that there is substantial evidence for the trial court to affirm the commission's decision terminating appellant's employment.

Appellant's point is overruled.

### Freedom of Speech

■■■■ Appellant next contends that, as a matter of law, he had a constitutional right as well as an obligation to inform the newspaper columnist, of the occurrence at the detention center. Both appellant and appellees cite *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20

---

**1.** There are other grounds for releasing information not applicable to this case.

L.Ed.2d 811 (1968) as their primary authority for the disposition of this contention. In *Pickering,* a public school teacher was dismissed for writing a letter to the local newspaper which criticized the school board's allocation of tax funds. He asserted that his first amendment freedom of speech had been violated. *Id.* at 564–65, 88 S.Ct. at 1732–33. The court held that Pickering's dismissal was an impermissible infringement on his protected speech. *Id.* at 568, 88 S.Ct. at 1734–35. The Court developed a two part test. The threshold inquiry being whether the public employee's speech may be fairly characterized as constituting speech on a matter of public concern. *Rankin v. McPherson,* 483 U.S. 378, 384–85, 107 S.Ct. 2891, 2896–97, 97 L.Ed.2d 315 (1987), reh'g denied 483 U.S. 1056, 108 S.Ct. 31, 97 L.Ed.2d 819 (1987); *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 1689–90, 75 L.Ed.2d 708 (1984); *Price v. City of San Marcos,* 744 S.W.2d 349, 353 (Tex.App.—Austin 1988, writ denied), cert. denied 488 U.S. 961, 109 S.Ct. 485, 102 L.Ed.2d 522 (1988). Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record. *Rankin* 483 U.S. at 384–85, 107 S.Ct. at 2896–97; *Connick* 461 U.S. at 147–48, 103 S.Ct. at 1690–91. If the answer is in the affirmative, the court must then balance the public employee's interest in free speech against the interests of the government employer in managing the work place. *Pickering* 391 U.S. at 568, 88 S.Ct. at 1734–35; *Rankin* 483 U.S. at 384, 107 S.Ct. at 2896–97; *Connick* 461 U.S. at 140, 103 S.Ct. at 1686.

■ In striking the balance between these competing interests the court considered the following factors: (1) the parties' working relationship; (2) the detrimental effect of the speech on the employer; and (3) the nature of the issue upon which the employee spoke, his relationship to that issue, and the value of his speech to the community. *Pickering* 391 U.S. at 570–72, 88 S.Ct. at 1735–37.

■ In considering the first factor, there is evidence to show that appellant's statements had an adverse effect on his working relationship with Sheriff Copeland and Dr. Sparks. Appellant's communication with the media placed Sheriff Copeland, Dr. Sparks, and Bexar County at risk of litigation by the detainee whose medical condition was revealed.

The second factor requires that we examine the nature and the content of the speech to determine the detrimental impact, if any, of the speech on the employer. *Pickering* at 571, 88 S.Ct. at 1735–37. We have previously concluded that knowledge of the detainee's medical condition was obtained by virtue of appellant's employment as a nurse in the detention center. The nature and content of the information released by appellant violated the regulations of the medical department of the detention center as well as the regulations of the Sheriff's Department. We conclude that the release of such information rendered a detrimental impact upon the operations of the Bexar County Sheriff's Department and the Medical/Psychiatric Department located therein.

Our final consideration requires that we determine whether there is a close nexus between the employee and the issue such that the employee's speech makes a valuable contribution to public understanding. *Id.* at 572–74, 88 S.Ct. at 1736–38. Appellant, as a member of the community and an employee of the Medical/Psychiatric Department was in a position to have an informed and definite opinion on security measures in the facility. His position as a nurse in the facility where the detainee was in possession of a weapon infers a close nexus between appellant and the issue of security at his work place.

However, appellant's statements, revealing breaches in security measures at the detention center also revealed the medical condition of a pretrial detainee. Information concerning the detainee's medical condition was confidential.

Acceptance of employment with the Department, subjected appellant to the medical-legal duties and obligation of the Department as well as the security rules, regulations, and policies of the Sheriff's De-

partment. Thus, his acceptance of these duties and obligations should have reasonably prevented appellant from breaching the physician-patient privilege as well as various regulations promulgated by Dr. Sparks and the Sheriff's Department.

While appellant's employment as a nurse in the detention center subjected him to the medical-legal duties and obligations characteristic of such public employment, acceptance of such employment did not require that he surrender his right as a citizen to comment on matters of public importance. *See Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). However, appellant's speech concerning the detainee's medical condition was not a matter of public importance and was not protected. *See Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734-35, 20 L.Ed.2d 811 (1968); *Attaway v. City of Mesquite*, 563 S.W.2d 343, 344 (Tex.Civ.App.—Dallas 1978, no writ).

The information concerning the detainee's medical condition was within the exclusive knowledge of the employees of the medical/psychiatric facility of the detention center. Appellant's communication could constitute an unwarranted invasion of privacy and was therefore not within the realm of public interest. It is apparent that the statement made to the newspaper columnist was, in part, in retaliation to the Sheriff's reprimand which appellant considered as abusive. The Sheriff's Department provides regulations which govern its employees. Chapter 735—Employee Responsibilities and Conduct, Subchapter 2—Department Regulations governing ethical and other conduct and responsibilities of employees, 206 Misuse of information provides:

> Except as provided in section 2-3 of this subchapter, an employee is prohibited from directly or indirectly using or allowing the use of official information obtained through or in connection with his Government employment which has not been made available to the general public, for the purpose of furthering a private interest.

We consider this rule to be a reasonable restriction of the freedom of speech, especially in application to employees working in the detention center.

There is evidence to support that release of the information was "for the purpose of furthering a private interest." Therefore, we hold that appellant's freedom of speech was not unreasonably infringed upon. The testimonial and documentary evidence reflects that the motive for adverse action against appellant stemmed from his release of specific, personal information about the detainee acquired while she was in the custody of the Sheriff.

We conclude that the Sheriff's refusal to re-issue appellant's security pass was not an abuse of discretion. As keeper of the county jail, the decision whether to grant or revoke a security pass remains totally within the Sheriff's discretion and is not subject to review. *See* LOCAL GOV'T CODE § 351.041 (Vernon 1988).

This point is overruled.

### Whistle Blowers Act

Appellant contends that he is protected by the Whistle Blowers Act because he is a public employee who reported a violation of the law and was suspended as a result of his report. Article 6252-16a, TEX.REV.CIV.STAT.ANN. (Vernon Supp. 1989), known as the Whistle-Blower's Act provides:

> A state or local governmental body may not suspend or terminate employment of, or otherwise discriminate against, a public employee who reports a violation of law to **an appropriate law enforcement authority** if the employee report is made in good faith. Article 6252-16a, § 1.

It is appellant's assertion that he reported a violation of law to the appropriate authority when he notified Sheriff Copeland that there had been a detainee at the County jail with a weapon in her possession. The statute specifically provides that any report should be made to the appropriate law enforcement authority. Appellant does not come within the ambit of the statute. The cause of appellant's suspension and subse-

quent termination was that he reported the incident to Paul Thompson, a columnist for the San Antonio Express News, not his confrontation with the Sheriff. The Sheriff testified that he learned of the information not from appellant, but instead from one of his employees.

Furthermore, the reported decisions under Article 6252–16a involve retaliation against employees who reported employees of law or other misconduct committed by other government employees or officials. *See City of Ingleside v. Kneuper,* 768 S.W.2d 451 (Tex.App.—Austin 1989, writ denied); *City of Brownsville v. Pena,* 716 S.W.2d 677 (Tex.App.—Corpus Christi 1986, no writ); *Garza v. City of Mission,* 684 S.W.2d 148 (Tex.App.—Corpus Christi 1984, writ dism'd). Appellant reported a violation committed by a detainee to a newspaper. Thus appellant's report to the media that there had been a detainee in the jail with a gun does not afford appellant the protection provided by the statute.

Appellant's final point is overruled.