DALLAS COUNTY CIVIL SERVICE COMMISSION and Dallas County, Appellants,

v.

Betty Jean WARREN, Appellee.

No. 04–98–00159–CV.

Court of Appeals of Texas, San Antonio.

March 3, 1999.

Jana Marie Prigmore, Assistant District Attorney, Bill Hill, Criminal District Attorney, Dallas, for Appellant.

Ronald E. Harden, The Hardin Law Firm, L.L.P., Terrell, Alfred L. Ruebel, Erhand, Ruebel & Jennings, P.C., Dallas, for Appellee.

Before PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, Justice and ALMA L. LÓPEZ, Justice.

## OPINION

Opinion by: PHIL HARDBERGER, Chief Justice

The Dallas County Civil Service Commission ("Commission") and Dallas County ("County") appeal a judgment in favor of Betty Jean Warren ("Warren") in an appeal from the Commission's decision upholding the termination of Warren's employment by the County. At the hearing before the Commission, the burden of proof was erroneously imposed on Warren, then, on appeal to the trial court, the trial court erroneously submitted the substantial evidence issue to the jury. Given this combination of errors, we reverse the trial court's judgment and remand the cause to the trial court with instructions to: (1) award Warren only those attorneys' fees arising from her due process claim; and (2) remand the cause to the Commission for another hearing with instructions to apply the proper burden of proof.

## FACTUAL AND PROCEDURAL HISTORY

Warren was hired by Dallas County to work as a secretary in the juvenile section of the public defenders office in April of 1990. Warren was the only secretary in the section, and she worked for six attorneys.

During Warren's initial six month probationary period, her supervisor, Elizabeth Parmer, documented various problems with Warren's work product. In addition, Parmer documented Warren's failure to attend mandatory staff meetings. Toward the end of Warren's probationary period, Parmer approached the head of the public defenders office, Carl Hayes, requesting that Warren be terminated. As a compromise, Hayes decided to extend Warren's probationary period an additional six months. After the additional six months, Warren was removed from probationary status, and her subsequent performance evaluations rated her as competent. In addition, she was given a letter of commendation from the supervisor that replaced Parmer in 1993, Sandra Harward.

In 1994, several incidents occurred which culminated in Warren's dismissal. In May of 1994, an intern called to say that she would be late. Warren failed to relay the message to Hayes, which almost resulted in the intern's dismissal. Warren explained that the intern arrived at the office before Hayes and that she told the intern that she had not relayed the message because she had not seen Hayes.

On June 9, 1994, an attorney called and asked Warren whether she had any cases on her docket that day because the attorney was sick and wanted to stay home. Warren informed her that she did not have any cases; however, Hayes subsequently received a phone call from a judge in whose court the attorney was scheduled to appear. As a result, Hayes and another attorney had to handle the case unprepared. Warren explained that she looked at the docket on the attorney's desk as instructed, but the docket that was on the attorney's desk was for the wrong day. In addition to the mistake regarding the docket, Warren was unable to find the client's file who was scheduled to appear in court. Warren explained that the

file was misplaced by a co-worker who Warren was cross-training.

Hayes adopted a policy that prohibited smoking within the building. This policy was more stringent that the policy adopted by the County; however, Hayes had the discretion to adopt such a policy. Warren and a few other employees continued to smoke in vacant offices in violation of this policy. Warren also encouraged other employees to continue smoking in the vacant offices. Warren testified that she did not encourage other employees to continue smoking in violation of the policy.

Warren was given several verbal warnings and a written warning regarding her actions in documenting the absences and timeliness of another employee, Belinda Jimenez. Warren admitted that she kept notes regarding the time she was required to cover as receptionist for Jimenez because it required her to be away from her desk. Warren also admitted that she inquired into whether Jimenez had ever been placed on suspension because of problems regarding her tardiness. However, Warren denied that she kept a "secret file" on Jimenez.

On June 3, 1994, Warren's supervisor, Mike Morrow, met with her to counsel her regarding these incidents and her work performance. Morrow informed Warren that any future problems could affect her continued employment.

On June 15, 1994, Hayes gave Warren a memorandum regarding the incident involving the attorney who was told that she did not have any cases on her docket when she called in sick. The memorandum stated that any future "foul-ups" would be dealt with severely, and any further "cover-ups" would result in unconditional termination.

On June 17, 1994, Warren sent out discovery to be filed before it was signed by the attorney. The discovery was also sent without the required attachments. Warren attempted to blame another employee but admitted to a different employee that she had left out the attachments. Warren stated that she was following instructions and that it was the fault of the person who was instructed to file and deliver the documents.

On June 24, 1994, Warren typed a report for an attorney that contained mistakes and omissions. Warren testified that she was only asked to prepare a report by putting a written list into alphabetical order. Warren contended that the errors and omissions could have been in the original list which was not presented as evidence.

Warren was terminated on July 15, 1994. She filed a grievance with the Commission. At the hearing, Warren was instructed that she had the burden of proving to the panel that her termination should be overturned. At the end of the hearing, a County employee was instructed by a commissioner to attempt to locate a position for Warren with the County. On October 19, 1994, Warren was notified that the Commission had decided not to take any action to overturn the termination. Warren then appealed to the trial court.

The trial court granted a directed verdict in favor of Warren on her due process claim based on the Commission's improper placement of the burden of proof at the Commission hearing. The trial court submitted the issue of whether Warren's dismissal was justified and whether Warren was terminated because of her race to the jury. The jury found that the Commission and the County had failed to prove by substantial evidence that Warren's dismissal was justified; however, the jury found that Warren was not terminated based on her race. The jury awarded damages for the unjust dismissal and the violation of Warren's due process rights. The Commission and the County appeal from the trial court's judgment, asserting the following seven points of error: (1) the issue of whether substantial evidence supported the Commission's decision should have been decided by the trial court as a matter of law not by the jury; (2) the evidence is legally and factually insufficient to support the jury's finding that Warren's dismissal was not justified; (3) the evidence is legally and factually insufficient to support the jury's finding of actual damages with regard to Warren's unjust dismissal claim; [1] (4) the evidence is legally and factually insufficient to support the trial court's finding that Warren was denied her right to due process; (5) the evidence is legally and factually insufficient to support the jury's finding of actual damages based on Warren's due process claim; [2] (6) the trial court improperly rendered judgment based on separate theories for the same measure of damages; and (7) the evidence is legally and factually insufficient to support the finding that Warren is entitled to recover attorneys' fees of $72,-374.50.

## Unjust Dismissal and Substantial Evidence

In their first point of error, the Commission and the County assert that the issue of whether Warren's dismissal was justified should have been decided by the trial court based on the substantial evidence rule as a matter of law, and not by the jury. Warren counters that the issue was properly submitted to the jury because her petition raised claims under 42 U.S.C. § 1983, the Fourteenth Amendment, and common law.

Although Warren's petition did raise numerous claims, the unjust dismissal question that was submitted to the jury was a question regarding whether the Commission's decision was supported by substantial evidence. Instruction number one of the jury charge reads:

> Plaintiff appealed the finding of the Dallas County Civil Service Commission which upheld her termination. The burden of proof is on Defendants to show there was substantial evidence to support the Commission's finding. "Substantial evidence" may be defined as such evidence as will convince reasonable men and on which they may not reasonably differ, that is, competent evidence such as a reasonable mind might accept as adequate to support a conclusion or justify a decision. It does not include perjured, incredible or unreasonable testimony.

---

1. The jury awarded Warren $29,216.16 for back wages and benefits, $1,824.90 for loss of professional reputation and humiliation, and $5,454.70 for mental and emotional distress.

2. The jury awarded Warren $20,000 for back wages and benefits and $20,000 for mental and emotional distress.

Jury question number 1 then inquires: "Did Defendants prove by substantial evidence that Plaintiff's dismissal was justified?" The question does not relate to a section 1983 claim, a Fourteenth Amendment claim or a common law claim. Rather, the question is clearly directed at the Commission's decision and whether it was supported by substantial evidence.[3]

■ A county employee who is removed from his or her position on a final decision of a commission may appeal the commission's decision by filing a petition in district court. TEX. LOC. GOV'T CODE ANN. § 158.012 (Vernon 1988). Although section 158.012(b) of the Local Government Code (as applicable to this appeal) provides that such an appeal is by trial de novo, section 158.037 of the Local Government Code, which contains the same language and serves a similar purpose, has been interpreted to mean that the trial court reviews the decision under the substantial evidence rule. *See Heard v. Incalcaterra,* 702 S.W.2d 272, 275 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.); *see also Bexar County Sheriff's Civil Service Comm'n v. Davis,* 802 S.W.2d 659, 661 n. 1 (Tex.1990), *cert. denied,* 502 U.S. 811, 112 S.Ct. 57, 116 L.Ed.2d 34 (1991); *Brooks v. Klevenhagen,* 807 S.W.2d 777, 778 (Tex.App.—Houston [14th Dist.] 1991, no writ). The phrase "trial de novo" is interpreted as meaning a trial to determine the issues of whether the agency's ruling is free of the taint of any illegality and is reasonably supported by substantial evidence. *Heard,* 702 S.W.2d at 275. This interpretation is further supported by recent legislative amendments to chapter 158 which replace the phrase "trial de novo" with "substantial evidence rule" and which explain the type of review to be conducted under the substantial evidence rule. *See* TEX. LOC. GOV'T CODE ANN. § 158.012(b) (Vernon Supp.

1999). Since the legislative amendments only apply to an appeal filed on or after September 1, 1997, the amendments do not apply to this case because Warren appealed to the trial court before that date. *See id.* historical note. Nevertheless, the amendments support the interpretation of section 158.012(b) as requiring the trial court to review the Commission's decision under the substantial evidence rule.

■ The application of the substantial evidence rule is well settled. *Firemen's & Policemen's Civil Service Comm'n v. Brinkmeyer,* 662 S.W.2d 953, 956 (Tex.1984); *Garay v. County of Bexar,* 810 S.W.2d 760, 763 (Tex.App.—San Antonio 1991, writ denied); *Heard,* 702 S.W.2d at 275. Warren, as the appellant of the Commission's order to the trial court, had the burden of demonstrating that the commission's order was not supported by substantial evidence.[4] *Brinkmeyer,* 662 S.W.2d at 956. Warren was permitted to introduce evidence at the trial de novo so that the trial court could determine, based on the record made in the trial court, whether there was substantial evidence to support the order at the commission hearing. *Garay,* 810 S.W.2d at 763; *Heard,* 702 S.W.2d at 275. The trial court could not substitute its judgment for that of the agency on controverted issues of fact, nor could it set aside the agency's order because the evidence did not compel the result reached by the agency. *Brinkmeyer,* 662 S.W.2d at 956; *Garay,* 810 S.W.2d at 763. The resolution of factual conflicts and ambiguities is the province of the administrative body, and the aim of the substantial evidence rule is to protect that function. *Brinkmeyer,* 662 S.W.2d at 956; *Garay,* 810 S.W.2d at 763. In its review, the trial court is concerned only with the reasonableness of the administrative order, not its

---

**3.** Warren continually refers to her section 1983 claim in her brief as a due process claim. Warren's due process claim did not relate to whether substantial evidence existed to support the Commission's decision. The due process claim related to whether the proper procedure was followed in terminating Warren. Since no due process claim was submitted to the jury, the only due process violation supporting Warren's section 1983 claim was the improper placement of the burden of proof by the Commission, which was the basis for the trial court's directed verdict.

Jury question number one did not incorporate Warren's section 1983 due process claim, because that claim was included in jury question number six as a directed verdict instruction, i.e., "You are instructed that the County violated the procedural due process rights of the Plaintiff."

**4.** We note that the instruction to jury question number one improperly placed the burden on the Commission and County.

correctness. *Brinkmeyer,* 662 S.W.2d at 956. Most importantly for purposes of this appeal, the issue before the trial court is one of law, and a trial of the fact issues by a judge or jury is avoided. *Cruz v. City of San Antonio,* 424 S.W.2d 45, 47 (Tex.Civ.App.—San Antonio 1968, no writ); *see also Holmans v. Transource Polymers, Inc.,* 914 S.W.2d 189, 193 (Tex.App.—Fort Worth 1995, writ denied) (asserting that what is substantial evidence is a question of law); *Burton v. Texas Employment Comm'n,* 743 S.W.2d 690, 692 (Tex.App.—El Paso 1987, writ denied) (quoting *Cruz v. City of San Antonio* ).

■ Given the applicability of the substantial evidence rule, the trial court erred in submitting the substantial evidence issue to the jury, and the first point of error is sustained.[5] *Cruz,* 424 S.W.2d at 47; *see also Holmans,* 914 S.W.2d at 193; *Burton,* 743 S.W.2d at 692.

### DUE PROCESS

In their fourth point of error, the Commission and the County assert that the evidence is legally and factually insufficient to support the trial court's finding that the County denied Warren her due process rights. The trial court granted a directed verdict in favor of Warren on her due process claims. During trial, the trial judge stated that he was granting the motion "on the wrongful placement of the burden, and den[ied] it otherwise." The "property interest" that Warren asserted due process rights to protect was her interest in her continued employment.

■ The basis of the argument advanced by the Commission and the County is that Warren's due process rights were satisfied when she was given notice and an opportunity for a hearing before the Commission.[6] Warren responds that her due process rights were violated because the Commission and the County failed to precisely follow each step of the established grievance procedure and because the Commission wrongfully placed the burden on her at the hearing before the Commission. Whether Warren's due process rights were violated is a proper issue for the trial court to consider in the appeal from the Commission's decision because such a violation raises the issue of whether the Commission's decision "is free of the taint of any illegality." *Heard,* 702 S.W.2d at 275; *see also* TEX. LOC. GOV'T CODE ANN. § 158.0121(2)(C) (Vernon Supp.1999) (allowing trial court to review whether commission's finding was made through unlawful procedure).

■ Although Warren asserts numerous ways in which her procedural due process rights were violated, the trial court only granted the directed verdict based on the wrongful placement of the burden of proof at the Commission hearing; therefore, this is the only ground we consider. The issue we must address is whether the burden must be placed on the County in a hearing before the Commission to provide due process to a terminated employee. In determining this issue, we must consider the following three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used and a probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Bexar County Civil Service Comm'n v. Davis,* 802 S.W.2d at 662–63. During the trial court's consideration of the motion for directed verdict, Warren relied upon the Texarkana court's decision in *Brandy v. City of Cedar Hill,* 884 S.W.2d 913 (Tex.App.—Texarkana 1994, no writ), to support her position that the burden was on the

---

**5.** Since the issue of unjust dismissal should not have been submitted to the jury, we do not reach the points of error relating to the sufficiency of the evidence to support the jury's finding on that issue and its award of damages.

**6.** The County and the Commission also argue that Warren waived her due process complaint by failing to object to the improper placement of the burden at the Commission hearing. Since we do not have a complete record from that hearing in our record, we cannot determine whether a proper objection was made; therefore, we cannot sustain this point of error based on waiver.

County to prove good cause, not upon her to show the termination was wrongful.

In *Brandy,* the Texarkana court stated:

It is initially the City's duty to prove good cause, not the employee's duty to prove that none existed. To countenance this procedure would adopt a draconic system of law that requires a person to prove herself worthy of continued employment and to defend against allegations not presented at the hearing rather than requiring the City to show good cause for termination.

884 S.W.2d at 916. The vice at which this statement was directed, however, was the fact that the person deciding whether Brandy was wrongfully terminated had been informed of the reasons for her termination outside Brandy's presence, and none of the reasons were presented at the hearing. *Id.* The City's failure to present any witnesses to establish the reasons for Brandy's dismissal deprived Brandy of the opportunity to cross-examine the witnesses or test the evidence against her. *Id.* Therefore, *Brandy* is factually distinguishable from the instant case. In this case, a full hearing was held before the Commission with witnesses presented by both Warren and the County. Warren was able to cross-examine the County's witnesses and to test the evidence against her.

■ Although *Brandy* involved a different procedural vice, the question remains whether the County must bear the burden at the hearing before the Commission to ensure that a terminated employee is provided due process. Applying the *Mathews* factors, an employee's interest in retaining her job is significant. *See Davis,* 802 S.W.2d at 663. Second, if the burden of proof is imposed on the employee, in a close case, the Commission might erroneously rule in favor of the County, thereby depriving the employee of her property interest in her job, simply based on the fact that the employee had the burden to overcome. The last factor is difficult to apply to this set of facts: "the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Arguably, the County would have an interest

in not bearing the burden of proof; however, given the fact that a full hearing would still be required, it would not appear that the County would be required to expend any additional efforts if it had the burden of proof. Assuming a terminated employee is given a full meaningful hearing, the County is already required to fully present its case. Furthermore, it makes sense that the County, which is seeking to deprive the employee of a property interest, would have the burden of proving that its actions were proper. In other words, the County must introduce the evidence to justify the termination because the County is seeking to take away the employee's property interest. Applying the *Mathews* factors, we conclude that the trial court correctly held that the Commission violated Warren's due process rights by imposing the burden of proof on her at the hearing.

In their fifth point of error, the Commission and County assert that the evidence is legally and factually insufficient to support the jury's award of actual damages based on the violation of Warren's due process rights. The jury awarded $20,000 for back pay and benefits and $20,000 for mental and emotional distress. *See Grounds v. Tolar Ind. Sch. Dist.,* 872 S.W.2d 823, 826 (Tex.App.—Fort Worth 1994, writ denied) (noting that compensatory damages for due process violations may include out-of-pocket loss, monetary harms, and other injuries such as impairment of reputation, personal humiliation, and mental anguish and suffering).

Warren introduced into evidence her W–2 forms for 1994 and 1995. In 1994, Warren earned $10,954. In 1995, she earned $1,080.63. In addition, Warren testified that when she was terminated, she was making $10 an hour. In January of 1996, she went to work for another company, and she made $8.00 an hour until July, when her rate increased to $9.37 an hour. Warren further testified that at the time she was terminated, she received health, dental and life insurance benefits that were paid by the County. She did not receive any benefits from her current employment or from any temporary employment since the date she was terminated.

To recover for mental anguish, Warren was required to show by direct evidence "the nature, duration, or severity of [her] anguish, thus establishing a substantial disruption in her daily routine," or show by other evidence "a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger." *Saenz v. Fidelity & Guar. Ins. Underwriters,* 925 S.W.2d 607, 614 (Tex.1996); *Parkway Co. v. Woodruff,* 901 S.W.2d 434, 444 (Tex. 1995). The amount of mental anguish damages must fairly and reasonably compensate for the loss. *Saenz,* 925 S.W.2d at 614. In reviewing the damage award, we must ascertain whether the amount awarded is fair and reasonable compensation. *Id.*

When Warren was terminated she was able to remain in her apartment for six months until her unemployment ran out. She was then forced to sell her personal belongings and move in with her sister for nine months. She then moved in with her mother. Warren testified that she has been unable to afford an independent existence, she lost all of her credit rating, and she was unable to afford to purchase insurance coverage until sometime in 1996. She lost a tooth and for six months she did not have any jaw teeth to eat because she could not afford to pay a dentist. She worried about where her next meal was coming from, and her weight was affected. She suffered from depression, and her sleep was affected. Her ex-husband paid for her to visit a doctor, who told her that her stomach problems were caused by nerves. Warren stated that she was normally an easygoing person, but she became hard to get along with and developed a feeling that everyone was out to get her. In addition, she would sometimes spend days in her room with the door shut just laying and staring at the ceiling.

While the foregoing evidence supports the categories of damages awarded by the jury, the evidence does not establish that those damages flowed directly from the due process violation. *Grounds,* 872 S.W.2d at 826. Assuming that substantial evidence was presented to support the Commission's decision, and, therefore, Warren was not unjustly dismissed, her damages based on decreased earnings and her mental anguish in not having a job would not flow from the due process violation at the hearing. However, because the Commission applied the wrong burden of proof at the hearing, we cannot determine from this record whether any of the damages sustained by Warren flowed directly from the due process violation. Such a determination can only be made after the Commission conducts a new hearing applying the proper burden of proof. Therefore, although we agree with the trial court that the Commission's decision was tainted by the improper imposition of the burden of proof, we are unable to sustain the damage award. If the Commission upholds the County's termination of Warren on remand after applying the proper burden of proof, and a trial court determines on appeal that the Commission's decision is supported by substantial evidence, Warren would not be entitled to recover decreased earnings and mental anguish as damages for the prior due process violation because the result would have been the same with the proper application of the burden of proof. Warren is, however, entitled to recover her attorneys' fees for having to pursue appellate relief due, in part, to the Commission's due process violation.

## DOUBLE RECOVERY

In their sixth point of error, the Commission and the County complain that the trial court's judgment awards Warren damages for back wages and benefits and for mental distress under two theories of recovery. The Commission and the County contend that Warren was required to elect which remedy on which they wanted the trial court to enter judgment. Since we have reversed the damage awards under both theories, this point of error is moot.

## ATTORNEYS' FEES

In their final point of error, the Commission and the County contend that the evidence is legally and factually insufficient to support the trial court's award of $72,-374.50 in attorney's fees. The Commission and County assert that because the portion of the judgment relating to the unjust dis-

missal must be reversed, the entire attorney's fee award must also be reversed, because Warren failed to segregate the fees between her causes of action for unjust dismissal and due process violations. Warren counters that she asserted numerous other claims under federal law that support the award of attorney's fees and that federal law applies in determining the reasonableness of the fee. The parties stipulated that the issue of attorneys' fees could be decided by the trial court on the basis of affidavits, and the trial court awarded attorneys' fees based on that procedure. We hold that the unjust dismissal claim and the due process violation are not sufficiently "interwined to the point of being inseparable;" therefore, the reversal as to the dismissal claim requires us to remand the attorneys' fees issue. *See Sterling,* 822 S.W.2d at 11.

## CONCLUSION

The Commission violated Warren's due process by imposing the burden of proof on her at the Commission's hearing. The trial court erred in submitting the substantial evidence question to the jury. We reverse the trial court's judgment and remand the cause to the trial court with instructions to: (1) award Warren only those fees relating to her due process claim; and (2) remand the cause to the Commission for a new hearing at which the burden of proof shall be imposed on the County to prove that Warren's termination was justified by good cause.