# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

---

m 01-20979

---

ANDREW B. JAMES,

Plaintiff-Appellant,

VERSUS

CITY OF HOUSTON, TEXAS; LEE P. BROWN, MAYOR;
MARY DESVIGNES-KENDRICK,

Defendants-Appellees.

---

Appeal from the United States District Court
for the Southern District of Texas
(00-CV-2594)

---

September 12, 2002

Before SMITH and BENAVIDES, Circuit Judges, and FITZWATER, District Judge.[*]

JERRY E. SMITH, Circuit Judge:[**]

The district court held that Andrew James had failed to provide summary judgment proof that the defendants (1) fired him for his constitutionally protected speech or (2) deprived him of due process. We affirm on the first claim because the defendants inevitably would have terminated James regardless of the content of

---

[*] District judge of the Northern District of Texas, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be pub- (continued...)

[**](...continued)
lished and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

his speech. We affirm on the second for substantially the same reasons given by the district court.

## I.

We consider the summary judgment record in the light most favorable to James.[1] The City of Houston employed him as assistant director of the Administrative Support Division of the Department of Health and Human Services ("DHHS"). He coordinated the city's acquisition, development, and operation of Multi-Service Centers ("MSC's"), which the complaint describes as "community facilities at which citizens can receive information and services."

In November 1996, James purchased residential property in the Third Ward, at 3024 Holman. The owners signed quitclaim deeds transferring their total interest to James, who recorded the deeds in Harris County. The original owners and James contracted to give the three original owners 82% of the sales proceeds if James sold the property within ten years. The contract terminates by its own terms in November 2006, presumably leaving James with ownership of the real property and no further obligations to the original owners. As an assistant director, James was required to report all personal financial holdings, but he failed to report 3024 Holman on his financial disclosure statement filed in October 1997.

At work, James concentrated on planning the development of an MSC for the Third Ward. Construction was scheduled to begin in late spring or summer of 1998. During early 1998, James Douglas, then president of Texas Southern University ("TSU"), began discussions with the Third Ward Redevelopment Council and the Houston Independent School District about joining with Houston to build a baseball complex next to the planned Third Ward MSC. The city held a town hall meeting on May 9, 1998, during which a Third Ward community leader proposed to Mayor Brown that the Third Ward MSC be expanded to include the proposed joint-use baseball complex. The expansion would require moving the MSC building approximately 155 feet.

James opposed the expansion. According to his testimony, he thought expansion would further delay the completion of the Third Ward MSC. James voiced his opposition at various community and department meetings. He could not identify precisely the various occasions at which he expressed opposition, but he specifically recalls sharing his concerns with Mary desVignes-Kendrick, the director of DHHS, Earl Travis, James's immediate supervisor, and at various community meetings.

As a follow-up to the town hall meeting, a community gathering was organized to discuss the topic on June 11, 1998. The next day, James and other city employees physically walked the land encompassed by the proposed expansion. According to the defendants, James "even then, failed to disclose his ownership of the very property they walked on." James did not disclose his ownership interest until early July 1998. According to desVignes-Kendrick, she immediately instructed James to recuse himself from the development of the Third Ward MSC.

Brown then postponed construction and

---

[1] We lift our statement of the facts from the district court's thorough memorandum and opinion. James himself incorporated these facts into his brief, so we can safely assume that the court successfully recited them in the light most favorable to James.

authorized a feasibility study of the proposed expansion. James contends that Brown decided in July or August 1998 that changes would be made to the plans for construction of the Third Ward MSC. The defendants claim that, after being asked to divorce himself entirely from the Third Ward MSC project, James attended at least one community meeting and obtained a copy of the confidential report on the project's feasibility.

Once James realized the city was abandoning the original plans in favor of expansion, he hired an attorney to represent him in the condemnation proceedings. Houston appraised James's property at $117,899 and offered him that sum in December 1998. The summary judgment evidence showed that James never accepted the offer but does not reveal why.

In February 1999, Brown initiated an investigation into whether James had acted illegally or improperly in connection with his purchase of 3024 Holman or the expansion proposal. DesVignes-Kendrick reassigned James to work at home with full pay and benefits pending the outcome of the investigation by the Office of the Inspector General ("OIG").

Concurrently, on August 18, 1999, a grand jury considered evidence of James's criminal wrongdoing and declined to indict. Within a couple of weeks, the OIG issued its report, concluding that James had no knowledge of expansion plains for the Third Wave MSC when he acquired the nearby property and did not use his influence to instigate the expansion. The OIG found insufficient evidence to prove or disprove the charges of perjury and misuse of official information. The report did find sufficient evidence to conclude that James violated municipal ordinances by filing a false financial disclosure statement.

Following the investigation, desVignes-Kendrick recommended James's demotion to deputy assistant director. She notified James that she had "complete[ly] lost trust and confidence in [his] judgment in [his] current position." She listed, as supporting reasons, James's tardy disclosure of property ownership and his failure to recuse himself when she so requested. The letter also notified James that he was scheduled for a meeting at which he and his representative could discuss the allegations and recommendation. James and his attorney attended the meeting on November 4, 1999.

Based on James's response to the allegations, at the meeting, desVignes-Kendrick decided that the city should terminate, rather than demote, him. She issued another notice letter outlining her recommendation and scheduling a meeting with him and his attorney. The allegations included the additional charge that James had abused his power as supervisor by asking an employee to notarize the quitclaim deeds outside the presence of the signatories. She also cited concerns that surfaced during the meeting about his lack of candor and judgment, including his continued refusal or inability to perceive and recognize the potential conflicts of interest. James admits attending the termination meeting on March 30, 2000, with his attorney, but denies that he had an opportunity to further explain his actions.

Brown received desVignes-Kendrick's recommendations and met with her to discuss them. Both defendants deny discussing any of James's protected speech activities. Brown agreed with her recommendation and issued a letter formalizing James's termination, iterat-

ing the above allegations, and listed various policies and ordinances violated by James's actions.

James appealed to the civil service commission, which held a hearing and permitted James to present witnesses and exhibits. The commission denied James's appeal on June 23, 2000. James sued in state court, and the city removed to federal court. James alleged violations of his due process and free speech rights, similar claims under the Texas Constitution, and a state claim to review the civil service commission's decision.

By agreement, the case was assigned to the magistrate judge ("the district court" or "the court"). Defendants filed a motion for summary judgment, which the court granted on the federal claims. The court remanded the state claims to state court.

II.

We review a summary judgment *de novo*. *Int'l Shortstop, Inc. v. Rally's*, 939 F.2d 1257, 1263 (5th Cir. 1991). Summary judgment is appropriate if the movant shows the absence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant should do so by informing the court of the motion's basis and identifying portions of the record to highlight the absence of a factual dispute. *Id.*. After the movant identifies a deficiency in proof, the nonmovant must present record evidence establishing each of the challenged elements of its case for which it will bear the burden of proof at trial. *Topalian v. Ehrman*, 954 F.2d 1125, 1132 (5th Cir. 1992).

The nonmovant can point to depositions, affidavits, or any other competent evidence. *Int'l Shortstop*, 939 F.2d at 1263. Conclu-

sional allegations do not count as competent evidence. *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985). The nonmovants must go beyond the allegations contained in their pleadings and identify specific facts creating a genuine issue worthy of trial. *Anderson*, 477 U.S. at 248-49.[2]

Title 42 U.S.C. § 1983 allows James to sue for alleged violation of constitutional rights and requires him to allege and prove (1) that an individual acting under the color of state law (2) violated one of his federal constitutional or statutory rights. *Doe v. Rains County Indep. Sch. Dist.*, 66 F.3d 1402, 1406 (5th Cir. 1995). The individual defendants have a qualified immunity defense to such claims, *Hope v. Peltzer*, 122 S. Ct. 2508 (2002), while James must prove that the city's policy caused the violation of his constitutional rights, *Brown v. Bryan County, Okla.*, 219 F.3d 450, 457 (5th Cir. 2000).

Because we resolve this case by deciding the scope of James's constitutional rights, we need not reach either the qualified immunity or municipal policy issues. We first address James's claim that defendants discharged him in retaliation for his exercise of the First Amendment right to free speech.

---

[2] Defendants argue that the district court has discretion to resolve factual questions at summary judgment in a nonjury case. We need not reach this question, because we can affirm under FED. R. CIV. P. 56's more lenient standard. As we have noted, our circuit precedent conflicts on whether the court may apply a different standard at summary judgment in a nonjury case. *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 273 n.15 (5th Cir. 1987). Even the cases that permit the court to apply a different standard diverge over which standard it should apply. *Id.*

## III.

James must prove four elements to establish a First Amendment claim: (1) speech touching on a matter of public concern, (2) that his interest in speaking outweighed the city's interest in efficiency, and (3) an adverse employment action (4) in retaliation for his. *Kennedy v. Tangipahoa Parish Library Bd. of Control*, 224 F.3d 359, 366 (5th Cir. 2000). If James establishes that his protected speech was a substantial or motivating factor in the adverse employment decision, the burden shifts to the city, which may prove that it discharged him for another reason. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). In this appeal, the parties dispute only the causation element.

James points to *Branton v. City of Dallas*, 272 F.3d 730, 739 (5th Cir. 2001), in which we stated that "[i]t is for a jury to resolve any remaining factual disputes as to whether plaintiff's protected speech was a substantial or motivating factor in the adverse employment decision." Our statement in *Branton,* however, was conditionalSSwhere there is a genuine dispute over a material fact, the jury should resolve it. The motion for summary judgment tests whether such a dispute exists by requiring the person who bears the burden of proof to point to record evidence supporting each element of his claim. *E.g.*, *Topalian*, 954 F.2d at 1131-32. In this appeal, we must examine what summary judgment proof our precedent requires to establish a triable, First Amendment retaliation claim.

We repeatedly have held that the plaintiff must present direct or circumstantial evidence showing that the supervisor who made the adverse employment decision had knowledge of the protected speech.[3] The evidence may be circumstantial: For example, where a school teacher sent a letter to the superintendent, published a letter to the editor in the local paper reflecting the same views, and repeated them yet again at a school board meeting, we found she had created a fact question about whether an intermediate supervisor knew of her protected speech. *Tompkins v. Vickers*, 26 F.3d 603, 609 (5th Cir. 1994).

Propinquity between the protected speech and the adverse employment action, however, is not enough. *Beattie*, 254 F.3d at 605 & n.18. The plaintiff must provide proof that the supervisor was aware or likely to be aware of the speech. *Supra* note 3. Absent any direct or circumstantial proof of awareness, we have considered the supervisor's testimony of ignorance conclusive. *Beattie*, 254 F.2d at 603-04.

The district court held that James had not presented sufficient evidence to show that Brown had knowledge of James's opposition to expansion. James does not offer any real evidence that Brown knew. James did,

---

[3] *E.g, Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 604 (5th Cir. 2001) ("Without a showing that the board had actual knowledge of the alleged improper basis of Jones's and Acton's recommendation, the board cannot be held liable for the alleged retaliation."); *Fowler v. Smith*, 68 F.3d 124, 127 (5th Cir. 1995) ("[D]irect evidence in proving illegitimate intent is not required to avoid summary judgment in unconstitutional retaliation claims; circumstantial evidence will suffice.") (citation omitted). *See Price v. Brittain*, 874 F.2d 252 (5th Cir. 1989) ("[T]he employee bears the initial burden of demonstrating that his speech was constitutionally protected and that it was a 'substantial' or 'motivating' factor in the termination decision.").

however, offer *some* circumstantial evidence that desVignes-Kendrick knew of his opposition and recommended his termination. He pointed to evidence that desVignes-Kendrick supported expansion. She contradicted that evidence in her affidavit, but his impeachment might suffice to show pretext. This is a close and difficult question that we need not decide.

Under *Mt. Healthy*, 429 U.S. at 287, an employer that would have reached the same decision as to an employee's discharge in the absence of protected speech is not liable for retaliating against the employee. Defendants satisfied their burden of showing that the city would have discharged James anyway.[4] James does not dispute that he failed to report the real property on his financial disclosure forms. The OIG report concluded that his failure to report was material, false, misleading, and violated a municipal ordinance.

James argues that Brown himself failed to disclose some financial dealings, but Brown,

---

[4] To obtain summary judgment, "if the movant bears the burden of proof on an issue, . . . he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). We have granted summary judgment previously where the employer has demonstrated that no material fact question exists about whether the employer would have discharged the employee for an unrelated reason. *Benningfield v. City of Houston*, 157 F.3d 369, 376 (5th Cir. 1998) (concluding that evidence indicated that employee was given a medical discharge as the result of "an independent psychiatric evaluation")*; Brady v. Houston Indep. Sch. Dist.*, 113 F.3d 1419, 1424-15 (5th Cir. 1997) (accepting employer's proof of employee's deficient performance).

because he is elected, is not subject to the normal procedures for the hiring and firing of other city employees. The failure to report, standing alone, justifies James's dismissal regardless of the content of his speech. He fails to point to sufficient summary judgment to create a fact question that his protected speech, independent of his failure to disclose the conflict of interest, led to his discharge.

James argues that because he spoke out against expansion, he did not have a conflict of interest. This argument fundamentally misunderstands the importance of disclosure. The city has an interest in passing prophylactic measures so that it at least has *knowledge* of any personal financial holdings affected by municipal decisions. The city has a legitimate interest in avoiding both corruption and the appearance of impropriety, and comprehensive disclosure obligations are rationally related to that interest.

James oversimplifies the potential conflict of interest. His brief belabors the most obvious conflict: Because he owned property necessary for the expansion, he had an incentive to push for expansion so the city would buy his property. The conflict of interest easily could cut in the other direction, however.

For example, James may have intentionally purchased property adjacent to the MSC to speculate in the value that the MSC would add to the property in the neighborhood. If he estimated that value as greater than the market had estimated, then he could make a profit, and the fair market value established in a condemnation proceeding would not reflect that value. Thus, he would have recommended against expansion, even if it was in the city's best interests.

Alternatively, James stood to gain only 18% of the house's sale proceeds if he sold immediately in a condemnation proceeding. If he could retain the property for ten years, he would realize 100% of the sale price. The difference in his individual gain provides a powerful incentive to avoid expansion. We provide these illustrations not to demonstrate that James had an actual conflict of interest, but only to show that conflicts of interest are complicated, and the city has a strong interest in disclosure requirements to prevent actual and apparent conflicts.

Disentangling James's speech from the reason for his discharge is difficult; the two are interrelated. Regardless of his views on the expansion, however, his financial interest was so closely associated with the proposed expansion that the city would have terminated him regardless.

James has presented evidence that Brown and possibly desVignes-Kendrick supported expansion, but he has not presented a shred of summary judgment evidence that they would have terminated him for this reason; defendants already had a persuasive reason to end his employment. As explained in *Mt. Healthy*, a misbehaving employee should not be able to insulate his wrongful behavior by engaging in protected speech. 429 U.S. at 286. The summary judgment evidence sufficiently demonstrates that the city "would have reached the same decision as to" James's discharge "in the absence of protected speech." *Id.* at 287. We now turn to James' procedural due process claim.

## IV.

To state a claim for deprivation of due process, James must create a genuine issue of material fact that (1) the defendants deprived him of a constitutionally protected interest (2) without adequate procedures. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 541 (1985). James argues that additional state procedures are constitutionalized as part of the due process minimum; he also avers that defendants provided him with process that fell below the independent, constitutional minimum. We dismiss each argument in turn.

## A.

James argues that the district court erred by ignoring a Texas Court of Appeals opinion that requires the employer to bear the burden of proof in a civil service proceeding. *See Dallas County Civil Serv. Comm'n v. Warren*, 988 S.W.2d 864, 871 (Tex. App.SSSan Antonio 1999, no pet.). He contends that Fifth Circuit precedent requires the federal court to incorporate these additional state procedures into the federal, constitutional minimum. His explanation misunderstands the state court decision and the nature of the federal system.

In *Warren*, *id.* at 870-71, the court held that the *federal* Constitution's Due Process Clause required the employer to bear the burden of proof in the civil service commission's post-termination hearing. The court did *not* describe additional procedures guaranteed by the state constitution, state statute, state regulation, or even internal employment policies. *Id.* Even if state law could augment the procedures required by federal due process, *Warren* does not represent state law; it is a state court's interpretation of federal law that federal courts have no obligation to follow. At most, it has only persuasive force.

Courts sometimes look to state law when defining the scope of protected liberty

interests, but state law does not generally establish the constitutionally required procedures.[5] James cites *Ferguson v. Thomas*, 430 F.2d 852, 856 (5th Cir. 1970), for the proposition that "[w]hen published rules and regulations establish a particular statutory procedure for the termination of a teacher's employment, they may add to the constitutional minimum." Since *Ferguson*, however, we have realized that we need not look to state law to determine the constitutionally-required procedures.[6] *Warren*

is not Texas law, and Texas law does not define the scope of procedures guaranteed by the federal Constitution.

### B.

James argues that because the city afforded him inadequate pre-termination process, shifting the burden of proof to him in the civil service commission's post-termination hearing violated due process. We balance three factors to determine wether a government has afforded constitutionally adequate procedures: (1) the private interest affected; (2) the risk of erroneous deprivation from current and proposed procedures; and (3) the government's interest. *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976).

Under the first prong, James had a significant interest in continued employment. *Loudermill*, 470 U.S. at 543 ("We have frequently recognized the severity of depriving a person of the means of livelihood."). Under the second prong, we find that the risk of erroneous deprivation was minimal. In *Loudermill*, the Court described the constitutional requirements for state agencies' decisions to terminate employees. Before discharging an employee, public employers must provide notice of the reason for discharge and an opportunity to respond. 470

---

[5] Drawing the line between state procedures comprehensive or absolute enough to create a protectable liberty interest and those procedures that do not give rise to such an interest is difficult enough. The Supreme Court has struggled most acutely with the question whether state regulations create a protectable liberty interest in the prison context. *Compare Hewitt v. Helms*, 459 U.S. 460, 471-72 (1983) (looking to state prison regulations to determine that state law gave prisoner a protectable liberty interest but then to federal constitutional standards to determine minimum procedures) *with Sandin v. Connor*, 515 U.S. 472, 481 (1995) ("[S]hifting the focus of the liberty interest inquiry to one based on the language of a particular regulation . . . encouraged prisoners to comb regulations in search of mandatory language on which to base entitlements to various state-conferred privileges.").

[6] *McDowell v. Texas*, 465 F.2d 1342, 1345-46 (5th Cir. 1972) (en banc) ("[E]ven an invalid or improper discharge from such an office, unaccompanied by some more precise claim of *federal right* than a general claim of lack of due process, is not the sort of deprivation of a right, privilege or immunity which is secured by the Constitution of the United States . . . ."); *Levitt v. Univ. of Tex. at El Paso*, 759 F.2d 1224, 1230 (5th Cir. 1985) ("Such action may constitute a breach of contract or violation of state law, but (continued...)

[6](...continued) unless the conduct trespasses on federal constitutional safeguards, there is no constitutional deprivation."); Richard A. Fallon, Daniel J. Meltzer, & David L. Shapiro, eds., HART AND WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 559 (Foundation 4th ed. 1996) ("[I]f the case does involve a 'property' or 'liberty' interest (whether rooted in state or federal law), federal law governs the questions (i) whether there has been a deprivation, and (ii) if so, whether due process was afforded.").

U.S. at 545-46.[7]

The state need not hold a full evidentiary hearing. *Id.*[8] The hearing "need not definitively resolve the propriety of the discharge"; instead, it should serve as "an initial check against mistaken decisions." *Id.* "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Id.* at 546.

James does not contest that he had notice of the city's complaints against him. He also had two opportunities to rebut the charges that formed the basis for his discharge. Counsel represented him at both meetings.

At the first meeting, James attempted to explain his failure to disclose his ownership of the property. At the second meeting, James avers that he did not have an opportunity to respond, but the city had already unveiled most of its charges at the first meeting. After his termination, the civil service commission reviewed his claim for a full day and considered both testimonial and documentary evidence.[9]

James argues that he should not have been forced to bear the burden of proof in front of the civil service commission, but this represented only one of several levels of review. And not a single federal court of appeals has held that shifting the burden of proof in such a review proceeding violates the Fourteenth Amendment's Due Process Clause.[10]

Although we respect the decision of the Texas Court of Appeals in *Warren*, we, like

---

[7] "[I]n employment termination cases, the minimum pretermination procedural protections required by the Fourteenth Amendment are (1) written notice of the reasons for the termination and (2) an effective opportunity to rebut those reasons." *Davis v. Mann*, 882 F.2d 967, 974 (5th Cir. 1989).

[8] For example, the state need not provide an opportunity for oral testimony at the pretermination hearing. *FDIC v. Mallen*, 486 U.S. 230, 247 (1988).

[9] Post-termination procedures should be (continued...)

[9] (...continued) included in the *Matthews* balancing test. *Loudermill*, 470 U.S. at 546-57.

[10] We recently avoided the question whether the burden of proof could constitutionally be shifted in an attorney disciplinary proceeding. *Sealed Appellant 1 v. Sealed Appellee 1*, 211 F.3d 252, 255 (5th Cir. 2000). The other courts of appeals, however, have upheld burden shifting in a variety of public employment cases. *Benavidez v. Albuquerque,* 101 F.3d 620, 626-27 (10th Cir. 1996) (holding that government could constitutionally shift burden in post-termination proceedings because formal pre-termination proceedings existed); *Chung v. Park*, 514 F.2d 382, 386-87 (3d Cir. 1975) (finding hearing adequate where employee bore the burden of showing termination was "arbitrary, capricious or discriminatory"); *McTaggart v. Sec'y of the Air Force*, 458 F.2d 1320, 1323 n.4 (7th Cir. 1972) (finding that United States could shift burden in military disciplinary proceeding that determined ultimate rank and pay upon retirement). *See Papapetropoulous v. Milwaukee Transp. Servs., Inc.*, 795 F.2d 591, 601 & n.15 (7th Cir. 1986) (finding that arbitrator could use either clear and convincing or preponderance standard when reviewing employee's claim)*; Boston v. Webb*, 783 F.2d 1163, 1167 (4th Cir. 1986) (permitting shift in burden of proof after finding that employee lacked property interest in his job).

the district court, conclude that the federal courts have struck the correct balance. After the civil service commission denied his claim, James had a statutory right to seek review in state court, which he exercised. Although the district court declined to exercise jurisdiction over this state law claim after dismissing the federal claims, he may still seek a remedy in state court. These multi-layered formal procedures should sufficiently reduce the risk of erroneous deprivation.

Finally, the city and state have an interest in placing some limits on the procedures they guarantee through internal, civil service commission, and judicial review. The benefits of additional procedures would appear minimal, given the procedures already in place. James failed to create a fact question about whether his discharge conformed with due process.

AFFIRMED.