Affirmed and Opinion filed April 22, 2004









Affirmed and Opinion filed April 22, 2004.

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00612-CV

____________

 

ANDREW B. JAMES, Appellant

 

V.

 

THE CITY OF
HOUSTON,
TEXAS, LEE P. BROWN, and

MARY DESVIGNES-KENDRICK, Appellees

 



 

On Appeal from the 189th
District Court

Harris County, Texas

Trial Court Cause No. 00-34164

 



 

O P I N I O N

Appellant Andrew B. James sued appellees,
the City of Houston, Texas, Lee P. Brown, and Mary DesVignes-Kendrick, alleging
James was terminated in retaliation for his exercise of the
constitutionally-protected right to free speech and that he was deprived of
procedural due process at his post-termination hearing.  At issue is whether James is barred by the
doctrine of collateral estoppel from asserting his state-law claims when his
parallel federal-law claims were dismissed in a separate proceeding in federal
court.  We affirm. 








Factual and Procedural Background[1]

James was employed by the City of Houston
as Assistant Director of the Administrative Support Division of the Department
of Health and Human Services (ADHHS@).  James had been an employee of the City for
twenty-five years and coordinated the City=s acquisition,
development, and operation of Multi-Service Centers (AMSCs@), which provide
information and services to the City=s residents.

In November of 1996, James purchased
residential property in Houston=s Third Ward, at
3024 Holman.  The three owners signed
quitclaim deeds transferring their total interest to James, who recorded the
deeds in Harris County.  The original
owners and James then contracted to give the original owners 82% of any sales
proceeds if James sold the property within ten years of the date of
transfer.  Thus, the contract terminated
by its own terms in November of 2006, presumably leaving James with ownership
of the real property and no further obligations to the original owners.  As an assistant director, James was required
to report all personal financial holdings, but he failed to report the 3024
Holman property on his financial disclosure statement filed in October of 1997.








At work, James planned the development of
an MSC for the Third Ward.  Construction
was scheduled to begin in late spring or summer of 1998.  During early 1998, James Douglas, then
president of Texas Southern University, began discussions with the Third Ward
Redevelopment Council and the Houston Independent School District about working
with the City to build a joint-use baseball complex next to the planned Third
Ward MSC.  The City held a town-hall
meeting on May 9, 1998, during which a Third Ward community leader proposed to
Brown, then mayor of the City, that the Third Ward MSC be expanded to include
the baseball complex.  The proposed
expansion would require moving the MSC building approximately 155 feet.

James opposed the expansion.  According to his testimony in his federal
case, James thought expansion would further delay the completion of the Third
Ward MSC.  James voiced his opposition at
various community and department meetings. 
He could not identify precisely the various occasions at which he
expressed his opposition, but he specifically recalled sharing his concerns
with desVignes-Kendrick, the director of DHHS, and Earl Travis, James=s immediate
supervisor, as well as at various community meetings.

As a follow-up to the town-hall meeting,
the City organized a community gathering to discuss the proposal on June 11,
1998.  The next day, James and other City
employees physically walked the land encompassed by the proposed
expansion.  According to appellees, James
Aeven then, failed
to disclose his ownership of the very property they walked on.@  James did not disclose his ownership interest
until early July of 1998.  According to
desVignes-Kendrick, when she was informed of the ownership she immediately
instructed James to recuse himself from the development of the Third Ward
MSC.  Appellees claim that, after being
asked to divorce himself entirely from the Third Ward MSC project, James
attended at least one more community meeting and obtained a copy of the
confidential report on the project=s feasibility.

Once James realized the City was
abandoning the original plans in favor of expansion, he hired an attorney to
represent him in the condemnation proceedings. 
The City appraised James=s property at
$117,899, and offered him that sum in December of 1998.  James did not accept the offer.  The summary-judgment evidence in the federal
case does not reveal why.

In February of 1999, Brown initiated an
investigation into whether James had acted illegally or improperly in connection
with his purchase of 3024 Holman or the expansion proposal.  DesVignes-Kendrick reassigned James to work
at home with full pay and benefits pending the outcome of the investigation by
the Office of the Inspector General (AOIG@).








Concurrently on August 18, 1999, a grand
jury considered evidence of James=s criminal
wrongdoing and declined to indict. 
Within a couple of weeks, the OIG issued its report, concluding that
James had no knowledge of expansion plans for the Third Ward MSC when he
acquired the Holman property and did not use his influence to instigate the
expansion.  The OIG found insufficient
evidence to prove or disprove the charges of perjury and misuse of official
information.  The OIG found sufficient
evidence to conclude that James had violated municipal ordinances by filing a
false financial disclosure statement.

Following the investigation,
desVignes-Kendrick recommended James be demoted to Deputy Assistant
Director.  In a letter,
desVignes-Kendrick notified James that she had Acomplete[ly] lost
trust and confidence in [his] judgment in [his] current position.@  She listed, as supporting reasons, James=s tardy disclosure
of property ownership and his failure to recuse himself when she so
requested.  The letter also notified
James that he was scheduled for a meeting at which he and his representative
would discuss the allegations and recommendation.  James and his attorney attended the meeting
on November 4, 1999.

Based on James=s response to the
allegations at the meeting, desVignes-Kendrick decided that the City should
terminate, rather than demote, James. 
DesVignes-Kendrick issued another notice letter outlining her
recommendation and scheduling a meeting with James and his attorney.  The allegations included the additional
charge that James had abused his power as a supervisor by asking an employee to
notarize the quitclaim deeds outside the presence of the signatories.  She also cited concerns that surfaced during
the meeting about his lack of candor and judgment, including his continued
refusal or inability to perceive and recognize the potential conflicts of
interest.  James admits attending the
termination meeting on March 30, 2000, with his attorney, but denies he had an
opportunity to further explain his actions.








Brown met with desVignes-Kendrick to
discuss her recommendation.  Both Brown
and desVignes-Kendrick deny discussing any of James=s alleged
protected speech activities.  Brown
agreed with desVignes-Kendrick=s recommendation
and issued a letter formalizing James=s termination,
iterating the above allegations, and listing various policies and ordinances
violated by James.

James appealed to the Civil Service
Commission for Municipal Employees of the City of Houston (the ACivil Service
Commission@), which held a hearing and permitted
James to present witnesses and exhibits. 
The Civil Service Commission denied James=s appeal on June
23, 2000.  James sued in state court, and
the City removed to federal court.  James
alleged violations of his due process and free speech rights under the federal
Constitution, similar claims under the Texas Constitution, and a state-law
claim to review the Civil Service Commission=s decision.  Appellees filed a motion for summary
judgment, which was granted with regard to the federal-law claims.  The federal district court remanded the
state-law claims to state court.  The
decision by the federal district court was affirmed on appeal.  After resolution of the federal-law claims,
appellees filed a motion for summary judgment on James=s remaining
state-law claims on the ground that James was collaterally estopped from
asserting his claims under the Texas Constitution because the same issues were
litigated and resolved against him in the federal court action.  Appellees alternatively sought summary
judgment for Brown and DesVignes-Kendrick on the basis of official
immunity.  In its ruling, the trial court
specifically found that James=s claims were
barred by collateral estoppel.  The order
does not mention the alternative ground of relief urged on behalf of Brown and
DesVignes-Kendrick.  

Standard of Review








James contends the trial court erred in
granting appellees= motion for summary judgment.  Appellees filed a traditional motion for
summary judgment, and therefore had the burden to show that no genuine issue of
material fact exists and that they are entitled to judgment as a matter of
law.  Tex.
R. App. P. 166a(c); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546,
548 (Tex. 1985).  As defendants, they
must conclusively negate at least one essential element of each of James=s causes of action
or conclusively establish each element of an affirmative defense.  Sci. Spectrum, Inc. v. Martinez, 941
S.W.2d 910, 911 (Tex. 1997).  Appellees= motion rested on
the affirmative defense of collateral estoppel. 
In deciding whether a disputed material fact issue exists precluding
summary judgment on appellees= affirmative
defense, we resolve every reasonable inference in favor of James and take all
evidence favorable to him as true.  See
id. at 911. 

Analysis

Appellees assert that this entire appeal
can be resolved by answering the question of whether James=s state-law claims
are barred by the doctrine of collateral estoppel because his parallel
federal-law claims were dismissed in a separate proceeding in federal
court.  We agree and therefore address
James=s four issues in
our discussion of whether the doctrine of collateral estoppel bars his
state-law claims.

The doctrine of collateral estoppel is
used to prevent a party from relitigating an issue that it Apreviously
litigated and lost.@  Quinney
Elec., Inc. v. Kondos Entm=t, Inc., 988 S.W.2d 212,
213 (Tex. 1999); Spera v. Fleming, Hovenkamp & Grayson, P.C., 25
S.W.3d 863, 869 (Tex. App.CHouston [14th
Dist.] 2000, no pet.).  To invoke
collateral estoppel successfully, a party must establish the following
elements: (1) the facts sought to be litigated in the second action were fully
and fairly litigated in the first action; (2) those facts were essential to the
judgment in the first action; and (3) the parties were cast as adversaries in
the first action.  Spera, 25
S.W.3d at 869.  Whether collateral
estoppel applies is a question of law for the court to decide.  Id. at 870.

We must first ascertain
what issues were decided in the federal court action to determine whether those
findings might preclude James=s claims in the
state court action.  The Fifth Circuit
Court of Appeals, in affirming the district court=s opinion, made
the following factual determinations and conclusions:

$   James did not
dispute that he failed to report the real property on his financial disclosure
forms.

$   The OIG report
concluded that his failure to report was material, false, misleading, and
violated a municipal ordinance.

$   The failure to
report, standing alone, justified James=s dismissal regardless of the content of his speech.








$   James presented
evidence that Brown and possibly desVignes-Kendrick supported expansion, but
did not present a shred of summary-judgment evidence that they would have
terminated him for this reason.

$   James had a
significant interest in continued employment.

$   The risk of
erroneous deprivation was minimal in the City=s pre-termination process and
during the Civil Service=s post-termination hearing because
(1) James had notice of the City=s complaints against him and had two opportunities with his
counsel to rebut the charges before termination; and (2) the Civil Service
Commission reviewed James=s claim for a full day and
considered both testimonial and documentary evidence.

$   The City and the
State have an interest in placing some limits on the procedures they guarantee
through internal, civil service commission, and judicial review.

$   The benefits of
additional procedures would appear minimal, given the procedures already in
place.

$   James failed to
create a fact issue about whether his discharge conformed with due process.

 

Despite the Fifth
Circuit=s findings, James
contends that the doctrine of collateral estoppel cannot apply to his state-law
claims because (1) his federal- and state-law claims were presented in one
lawsuit; (2) the federal court remanded and did not rule on his state-law
claims; and (3) the issues to be determined in the state court action are
different from those essential to the determination of the federal claims.  We disagree.








We have previously
determined that the doctrine of collateral estoppel can be applied to state-law
claims after remand, even when those claims were not ruled upon by the federal
court and were presented in one lawsuit. 
Engstrom v. First Nat=l Bank of Eagle
Lake,
936 S.W.2d 438, 443 (Tex. App.CHouston [14th
Dist.] 1997, writ denied).  Additionally,
we do not view a federal court=s remand of
state-law claims prior to trial as recognition that the federal court viewed
the state-law claims as presenting different issues for consideration.  Id. at 443 (stating that A>in the usual case
in which all federal-law claims are eliminated before trial, the balance of
factors to be considered under the pendent jurisdiction doctrineCjudicial economy,
convenience, fairness, and comityCwill point toward
declining to exercise jurisdiction over the remaining state-law claims=@) (quoting Carnegie-Mellon
Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)).

Moreover, the City
has demonstrated that the issues to be determined in the state-law action are
the same as those that were litigated and resolved against James in the
proceeding in federal court.  In his
first issue, James alleges due process was violated when the Civil Service
Commission placed the burden of proof on him during its hearing to review the
City=s decision to
terminate him.  That claim is predicated
on Article I, Section 19 of the Texas Constitution and the due process clause
of the Fourteenth Amendment to the United States Constitution.  The federal court used the accepted Mathews
factors to reach its conclusion that James received due process.[2]  James, No. 01-20979, slip op. at 8 (AWe balance three
factors to determine whether a government has afforded constitutionally
adequate procedures: (1) the private interest affected; (2) the risk of
erroneous deprivation from current and proposed procedures; and (3) the
government=s interest.@) (citing Mathews
v. Eldridge, 424 U.S. 319, 335 (1976)). 
The City contends that, because Texas courts have determined there is a
lack of meaningful distinction between the protections provided under the
federal and Texas Constitutions, the finding of the Fifth Circuit that James
received due process sufficient under federal standards precludes a contrary
finding under the Texas Constitution.  We
agree.








The Texas Supreme
Court has determined that the procedural due process protections provided under
the Texas Constitution mirror those provided under the federal
Constitution.  See Univ. of Tex. Med.
Sch. v. Than, 901 S.W.2d 926, 929 (Tex. 1995) (AWhile the Texas
Constitution is textually different in that it refers to >due course= rather than >due process,= we regard these
terms as without meaningful distinction.@).  Although Texas state courts are not bound
by federal due process jurisprudence, Awe have
traditionally followed contemporary federal due process interpretations of
procedural due process issues.@  Id. 
Importantly, Texas courts interpreting procedural due process claims
have applied the Mathews factors to determine whether due course of law
was provided under the Texas Constitution. 
See Than, 901 S.W.2d at 930 (applying Mathews factors to
dismissed graduate student=s due process
claim under the Texas Constitution); Merritt v. Harris County, 775
S.W.2d 17, 21 (Tex. App.CHouston [14th Dist] 1989, writ denied)
(noting that the same due process analysis is required under either the federal
or Texas Constitutions and applying the Mathews factors to tenants= due process
claims).  James does not argue that a
state court should have used a different standard to evaluate his Texas due
process claim.  Nor has he argued that
the application of the Mathews factors to his due process claim under
the Texas Constitution would have been inappropriate.[3]  Accordingly, we find that, because Texas
courts apply the Mathews factors to determine whether a person has been
afforded due course of law under the Texas Constitution, the City met its
burden of proving that collateral estoppel precludes James=s state-law due
process claim.  The facts determinative
of this state-law claim were fully and fairly litigated by the same parties in
the federal proceeding and those facts were essential to the federal court=s judgment.  James=s first issue is
overruled.








In his second issue, James contends
his free speech claim cannot be barred by collateral estoppel because (1) he
alleges a violation involving a prior restraint, and a prior restraint on
expression is presumptively unconstitutional, and (2) freedom of expression
protections are greater under Article I, section 8 of the Texas Constitution
than they are under the First Amendment to the United States Constitution.  The City argues that the determination made
by the Fifth Circuit that James would have been terminated regardless of his
speech precludes any finding under the Texas Constitution that James=s right to free
speech was violated.  We agree.

James contends
that his claim involves a prior restraint because, in asking James to
immediately recuse himself from the development of the Third Ward MSC,
desVignes-Kendrick sought to bar James from speaking out on the project.  Although a prior restraint is presumptively
invalid, the directive from desVignes-Kendrick to James is not a prior
restraint.  See Alexander v. United
States, 509 U.S. 544, 550B51 (1993)
(explaining that the term Aprior restraint@ is used to
describe administrative and judicial orders forbidding certain communications
issued in advance of the time that such communications are to occur, and
finding that a prior restraint must place an actual legal impediment to the
speech activity); Reuters Am., Inc. v. Sharp, 889 S.W.2d 646, 653 (Tex. App.CAustin 1994, writ denied) (using
rationale in Alexander to find economic regulation was not a prior
restraint). 








Moreover, the mere
assertion that freedom of expression protections are broader under the Texas
Constitution than under the federal Constitution means nothing.  Bentley v. Bunton, 94 S.W.3d 561, 577B78 (Tex.
2002).  The Texas Supreme Court has
recognized that A>in some aspects
our free speech provision is broader than the First Amendment.=@  Comm=n for Lawyer
Discipline v. Benton, 980 S.W.2d 425, 434 (1998) (quoting Davenport v.
Garcia, 834 S.W.2d 4, 8 (Tex. 1992)). 
AHowever, to assume
automatically that the state constitutional provision must be more
protective than its federal counterpart A>illegitimizes any
effort to determine state constitutional standards.  If the Texas Constitution is more protective
of a particular type of speech, >it must be because
of the text, history, and purpose of the provision.=@  Id. (quoting Operation Rescue-Nat=l v. Planned
Parenthood of Houston and S.E. Tex., Inc, 975 S.W.2d 546, 559 (1998)) (internal
citations omitted).  Notably, the broader
protection language of Article I, section 8 appears to address laws that are
prior restraints.  Reuters, 889
S.W.2d at 653 (finding that the Texas Constitution afforded no broader
protections than the federal Constitution because the economic regulation at
issue was not a prior restraint). 
Because desVignes-Kendrick=s direction was
not a prior restraint and James has made no attempt to show how the text,
history, or purpose of the Texas Constitution affords him greater protection
than the First Amendment with regard to his claim, we find that James=s free speech
claim is afforded no greater protection under the Texas Constitution.

In this case, the
federal court applied the Mt. Healthy factors to evaluate James=s free speech claim.  James, No. 01-20979, slip op. at 6.[4]  A dispositive factor in that test is whether
the employee would have been terminated regardless of his speech activity.  Mt. Healthy City Sch. Dist. Bd. of Educ.
v. Doyle, 429 U.S. 274, 287 (1977) (finding that ADistrict Court
should have gone on to determine whether the Board had shown by a preponderance
of the evidence that it would have reached the same decision as to respondent=s reemployment
even in the absence of the protected conduct@).  Accordingly, we find that the City met its
burden of proving that collateral estoppel precludes James=s state-law free
speech claim because the particular issue was fully and fairly litigated by the
same parties in the federal proceeding and this issue was essential to the
federal court=s judgment.  James=s second issue is
overruled.

Having overruled
James=s first, second,
and fourth issues,[5]
we affirm the judgment of the trial court.

 

 

/s/      Leslie
Brock Yates

Justice

 

 

Judgment rendered
and Opinion filed April 22, 2004.

Panel consists of
Justices Yates, Anderson, and Hudson.











[1]  Our record
does not contain a transcript of the federal court proceedings.  Accordingly, the factual background detailed
in this opinion is largely borrowed from the Fifth Circuit Court of Appeal=s opinion, which adopted its statement of facts from
the federal district court=s memorandum opinion. 
See James v. City of Houston, No. 01-20979, slip op. at 2 (5th
Cir. Sept. 12, 2002).  The court stated
that it had incorporated the district court=s facts
because James had used those facts in his briefing; the court thus concluded it
was safe to assume the facts had been presented in the light most favorable to
James.





[2]  In his fourth
issue, James argues he is entitled to judicial review of the Civil Service
Commission=s decision because he asserted a constitutional
violation.  James has received judicial
review of the Civil Service Commission=s
decision in the federal court action and in the trial court below.  His fourth issue is overruled.





[3]  James argues
that the federal court inappropriately weighed the Mathews factors in
reaching its decision.  Specifically, he
disagrees with the federal court=s
application of a federal case, rather than a Texas case, in balancing the Mathews
factors.  However, the federal court=s decision is final and is not before us on
appeal.  James also contends that,
because the federal court did not rely on a Texas case, Dallas County
Civil Service Commission v. Warren, 988 S.W.2d 864 (Tex. App.CSan Antonio 1999, no pet.), the federal court refused
to apply clearly established Texas law to his due process claim and thus his
state-law claim cannot be barred by collateral estoppel.  James=s
reliance on Warren is misplaced. 
In Warren, the Fourth Court of Appeals held that a decision
reached by an administrative-review board that placed the burden of proof on an
employee did not meet constitutional minimum requirements.  988 S.W.2d at 970B72.  The Fourth
Court of Appeals did not review Warren=s due
process claim under the Texas Constitution; it reviewed Warren=s claim asserted under section 1983 of title 42 of the
United States Code using the Mathews factors.  See id. at 868, 870.  Thus, although Warren is a Texas case
addressing the burden of proof in an administrative appeal, it does not provide
Texas law on the issue.  Rather, it
offers a Texas=s courts application of federal law to the facts of a
particular case.  Accordingly, it is not
evidence that the Texas Constitution provides any additional procedural due
process protections than the federal Constitution. 





[4]  The same factors have been used in
discussing free speech claims under the Texas Constitution.  See Nelson v. Clements, 831 S.W.2d
587, 589 (Tex. App.CAustin 1992, writ denied)
(discussing the Mt. Healthy factors in connection with professor=s free speech claim under the Texas
Constitution).  





[5]  Because we found James=s claims are barred by the doctrine
of collateral estoppel, we need not address his third issue regarding official
immunity.