Mei–Chiao Chen WU, Richard Hsu,
Maya Hsu and Tzyy–Wen Hzy,
Appellants,

v.

CITY OF SAN ANTONIO, Appellee.

No. 04–05–00847–CV.

Court of Appeals of Texas,
San Antonio.

June 28, 2006.

Rehearing Overruled Sept. 18, 2006.

Anthony B. Schram, San Antonio, for appellants.

Thomas E. Shute, Asst. City Atty., San Antonio, for appellee.

Sitting: CATHERINE STONE, Justice, KAREN ANGELINI, Justice, REBECCA SIMMONS, Justice.

## OPINION

Opinion by REBECCA SIMMONS, Justice.

Appellants appeal the trial court's denial of a temporary injunction to stay the demolition order issued by the Dangerous Structure Determination Board for the City of San Antonio. Because we hold the appellants failed to establish a probable right of recovery, we affirm the trial court's order denying the motion for temporary injunction.

### FACTUAL BACKGROUND

In March of 1995, Appellants Mei–Chiao Chen Wu and Richard Hsu (collectively "Wu"),[1] purchased the property located at

---

1. The record indicates that Maya Hsu is the mother of Richard Hsu and loaned the money for the purchase of the building. During testimony, Ms. Hsu presented a power of attorney for Richard Hsu explaining that she had been in control of the property since 2002.

Mei–Chiao Chen Wu is also listed as an owner of the property and a named plaintiff, yet Ms. Hsu testified Mei–Chiao Chen Wu was her mother and that she passed away in May of 2003. The record does not indicate how the last named plaintiff, Tzyy–Wen Hzy is con-

2202 Vance Jackson, San Antonio, Texas during a tax foreclosure sale. The property contained a two story brick building comprised of twenty apartment units. In 2004, the City of San Antonio sued Wu in an attempt to have the property repaired and brought into compliance with city codes. Although the record suggests a minimal amount of work may have been completed on the property thereafter, in September of 2005, the City of San Antonio brought the property before its Dangerous Structure Determination Board (hereinafter "Board").

At the hearing conducted before the Board on September 12, 2005 only Appellant Maya Hsu, an informal lienholder, appeared on behalf of the property in question. The Board determined that the property was a public nuisance in violation of Chapter 6, Article VIII, Section 6–156 of the City Code of San Antonio and ordered the demolition of the main and accessory structures along with the filling of the pool.

Wu appealed the Board's orders pursuant to Sec. 6–173 of the City of San Antonio City Code and Chapter 214 of the TEX. LOC. GOV'T CODE (Vernon Supp.2005).[2] The review required that the trial court hold a hearing, based on a substantial evidence review, and to either "reverse or affirm, in whole or in part" the Board's decision.

See Sec. 6–173(c).[3] In addition to his appeal, Wu sought a temporary injunction on October 26, 2005 to prevent the demolition of the structure pending the trial court's review of the demolition order. The trial court granted Wu's temporary restraining order, pending a hearing on Wu's application for a temporary injunction.

On November 18, 2005, after hearing testimony and reviewing a multitude of pictures, reports and selected portions of the audio-taped recording of the Board's hearing, the trial court denied Wu's motion for temporary injunction and dissolved the temporary restraining order. The trial court subsequently entered its findings of fact and conclusions of law. It is the denial of this temporary injunction that is on appeal before this court.

### TEMPORARY INJUNCTION

 The purpose of a temporary injunction is to preserve the status quo until a final hearing on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). "To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Id.*

---

nected to the property or the lawsuit. The only reference to Tzyy–Wen Hzy is the Department of Code Compliance investigator's report which lists Tzyy–Wen Hzy under Mortgage Company with Maya Hsu.

2. TEX. LOC.GOV'T CODE ANN. § 214.001. **Authority Regarding Substandard Building** provides in part:

(a) A municipality may, by ordinance, require the vacation, relocation of occupants, securing, repair, removal, or demolition of a building that is:

(1) dilapidated, substandard, or unfit for human habitation and a hazard to the public health, safety, and welfare....

3. Sec. 6–173. **Enforcement; appeal to district court under substantial evidence rule; lien priority.**
(c) An aggrieved party's appeal from an order of the DSDB, when made to the district court, shall be limited, according to law, to a hearing under the substantial evidence rule, where under the court may reverse or affirm, in whole or part, the DSDB's decision. Accordingly, costs may not be allowed against the city.

## A. Temporary Injunction—Standard of Review

■ A trial judge has broad discretion in deciding whether to grant or deny a temporary injunction, and the standard of review is a clear abuse of discretion. *See Liberty Mut. Ins. Co. v. Mustang Tractor & Equip. Co.*, 812 S.W.2d 663, 666 (Tex. App.-Houston [14th Dist.] 1991, no writ). An appellate court will uphold the trial court's judgment unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *Butnaru*, 84 S.W.3d at 204. The trial court abuses its discretion when "the law is misapplied to established facts, or when the evidence does not reasonably support the conclusion that the applicant has a probable right of recovery." *State v. Southwestern Bell Tel. Co.*, 526 S.W.2d 526, 528 (Tex.1975).

Our review is limited to whether the trial court abused its discretion with regard to its determination of Wu's cause of action against the City of San Antonio, Wu's probable right to the relief sought— that being a reversal of the Demolition Board's Order and the probable, imminent, and irreparable injury in the interim. *See Butnaru*, 84 S.W.3d at 204. Our analysis begins with Wu's probable right of recovery.

## B. Probable Right of Recovery

An analysis of Wu's probable right of recovery required the trial court to determine Wu's likelihood of success in overturning the Board's order of demolition. We must therefore review the trial court's application of the substantial evidence rule with regard to the findings of the Dangerous Structure Determination Board. *See*

Tex. Loc. Gov't Code Ann. § 214.0012(f) (Vernon Supp.2005).[4]

### 1. Substantial Evidence Rule—Standard of Review

■ A reviewing court, be it a trial court or an appellate court, reviews an agency's demolition order de novo based on the substantial evidence rule. Tex. Lab. Code Ann. § 212.202 (Vernon Supp.2005). Whether substantial evidence exists to support the agency's order focuses on whether reasonable minds could have reached the same conclusion. *Gulf States Util. Co. v. Pub. Util. Comm'n*, 947 S.W.2d 887, 890 (Tex.1997). More specifically, "trial de novo" is interpreted to mean "a trial to determine 'the issues of whether the agency's ruling is free of the taint of any illegality and is reasonably supported by substantial evidence.'" *Heard v. Incalcaterra*, 702 S.W.2d 272, 275 (Tex.App.-Houston [1st Dist.] 1985, writ ref'd n.r.e.) (internal citations omitted).

■ The process creates a hybrid standard of review wherein a trial court must determine, by an examination of the evidence presented at trial, whether there is substantial evidence to support the agency's ruling. *Mercer v. Ross*, 701 S.W.2d 830, 831 (Tex.1986). The difficulty arises from the dual role the trial court must play.

> On one hand, the court must hear and consider evidence to determine whether reasonable support for the administrative order exists. On the other hand, the agency itself is the primary fact-finding body, and the question to be determined by the trial court is strictly one of law.

*Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953,

---

4. Tex. Loc. Gov't Code Ann. § 214.0012(f):

(f) Appeal in the district court shall be limited to a hearing under the substantial evidence rule. The court may reverse or affirm, in whole or in part, or may modify the decision brought up for review.

956 (Tex.1984) *(citing Board of Firemen's Relief & Retirement Fund Trustees of Houston v. Marks,* 150 Tex. 433, 242 S.W.2d 181, 183 (1951)).

▉ The agency's order is presumed valid and the party seeking to overturn the agency's determination bears the burden of showing that it was not supported by substantial evidence. *City of San Antonio v. Texas Water Comm'n,* 407 S.W.2d 752, 758 (Tex.1966). The substantial evidence review requires "only more than a mere scintilla" to uphold the order. *Montgomery Indep. Sch. Dist. v. Davis,* 34 S.W.3d 559, 566 (Tex.2000). The trial court may consider any evidence "in existence at the time of the hearing before the appeal tribunal regardless of whether it was introduced at the administrative hearing." *City of Houston v. Tippy,* 991 S.W.2d 330, 333 (Tex.App.-Houston [1st Dist.] 1999, no pet.)(*citing Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer,* 662 S.W.2d 953, 956 (Tex.1984)). The evidence may actually weigh against the agency's decision, yet amount to substantial evidence, if some reasonable basis exists in the record for the agency's action. *City of El Paso v. Pub. Util. Comm'n,* 883 S.W.2d 179, 185 (Tex.1994).

## 2. Trial Court's Review

▉ Because Wu sought a reversal of the Board's demolition order, he bore the burden of presenting sufficient evidence to warrant a reversal of that order. *Dallas County Civil Serv. Comm'n v. Warren,* 988 S.W.2d 864, 869 (Tex.App.-San Antonio 1999, no pet.); *Garay v. County of Bexar,* 810 S.W.2d 760, 763 (Tex.App.-San Antonio 1991, writ denied). Moreover, the trial court was bound to consider only the evidence relevant to the issue of whether the Board acted arbitrarily and without regard to the facts. *Garay,* 810 S.W.2d at 763; *see also Office of Pub. Util. Counsel v. Public Util. Comm'n,* 895 S.W.2d 712,

714 (Tex.App.-Austin 1993), *rev'd on other grounds,* 878 S.W.2d 598 (Tex.1994).

We therefore review the trial court's findings by comparing the agency's decision with the evidence presented to the trial court and the governing law. *Potts v. Texas Employment Comm'n,* 884 S.W.2d 879, 882 (Tex.App.-Dallas 1994, no writ). We must answer whether the temporary injunction evidence established that some evidence existed to support the agency's decision. *Id.* at 883. The question is whether there is a reasonable basis in the record to support the agency's action, not whether the agency reached the correct conclusion. *Texas Dept. of Public Safety v. Guajardo,* 970 S.W.2d 602, 605 (Tex. App.-Houston [14th Dist.] 1998, no pet.).

## 3. Evidence Presented at the Trial Court

At the temporary injunction hearing on November 18, 2005, Maya Hsu and John Doughtery, a structural engineer, testified on behalf of the property owners. Doughtery testified that he had performed a visual inspection of the premises on October 21, 2005 and in his opinion the foundation was in good condition and performing well and that the alleged problems were essentially cosmetic. Ms. Hsu testified that she planned to make the necessary repairs to the building and to bring the building into compliance. Additionally, Wu presented the audio-taped testimony from the September 12, 2005 Board meeting of contractor Richard Garcia who testified that the building was structurally sound and capable of repair and a board member who acknowledged that the building could possibly be renovated.

The City of San Antonio called the dangerous premises inspector as a witness. During cross-examination, Wu's counsel was able to elicit testimony that the City's inspector would in fact recommend repair

to the property if she felt Wu would actually follow through and perform the work. However, the inspector was unyielding that without repairs, the property would continue to deteriorate and pose such a hazard that the building should be demolished. The City also called a senior building inspector who acknowledged that the foundation of the building was structurally sound but further testified that his concerns were with the structure itself and the failure on the part of Wu to make the necessary repairs.

### 4. Analysis

 Resolution of factual conflicts is the province of the administrative body and the substantial evidence rule is intended to safeguard that function. *Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 956 (Tex. 1984). The Board is the fact-finder and the trial court may not set aside the order based on conflicting evidence or disagreement with the result reached. *Id.* Instead, the trial court's review must focus solely on the reasonableness of the administrative order, not necessarily its correctness. *Id.*

 The record establishes numerous complaints about the property were filed between May 2001 and August 2004. Presumably, based on these complaints and requests by the City of San Antonio to make repairs to the premises, in late 2004, Hsu sent a letter to the City outlining the improvements planned for the property. Yet, in April and June of 2005, the property in question remained in violation of multiple city code sections as reported by the City of San Antonio's code compliance investigator. Furthermore, during the hearing on the temporary injunction, the inspector testified that he had seen no

evidence of repair work for previous violations. On September 12, 2005, the Dangerous Structure Determination Board found evidence that:

> the main structure: exterior walls have deteriorated wood members, are cracked, have loose members, brick facade is cracking, balconies are deteriorated, windows are broken; roof has deteriorated overhang, has holes, is sagging, facia boards are deteriorated and separating; the interior walls have broken sheet rock, have holes; the floors have deteriorated wood members, have holes, and are water damaged. Interior has been vandalized. Structure is unsecured and is being entered by unauthorized persons. Structure is tagged with graffiti, structure has a bee infestation problem. The accessory structure exterior walls have deteriorated wood members, cracked; roof has deteriorated overhang, is sagging, has deteriorated roof covering; interior walls have deteriorated studs, broken sheet rock, water damage, holes in walls; interior has been vandalized.

The basis for Wu's appeal to the district court was that the Board's order is illegal because the evidence presented supported the position that the building could feasibly be repaired. As such, the Board was required to order the building repaired prior to entering a demolition order. Wu does not contest the Board's determination that the building was a nuisance. Instead, Wu argues that the City did not abide by the two step process outlined by the City Code requiring first a finding of nuisance and second, compliance with Sec. 6–159(1)'s requirement that the Board first order the building be repaired or remedied prior to demolition.[5] *See* Sec. 6–159 of the

---

5. Sec. 6–159. **Standards for repair, vacation, or demolition; DSDB review of demolition** settlement.

City of San Antonio City Code. Yet, Sec. 6–158 provides the procedure for the Dangerous Structure Determination board to determine whether a building is a public nuisance under Sec. 6–157 and also the authority to make remediation orders or demolition orders when required under Sec. 6–160. *See* Sec. 6–158.

Wu bore the burden to prove that the necessary changes required to bring the structure into compliance could be reasonably performed. *See* TEX. LOC. GOV'T CODE ANN. § 214.001(*l* ) (Vernon 2005). The trial court found that the City of San Antonio provided testimony and evidence supporting the legality of the demolition order and that substantial evidence existed supporting the Board's September 12, 2005 order. The testimony supports the conclusion that the building is inhabitable, unsafe and Wu's failure to contest the Board's finding of the structure as a public nuisance is further evidence of the same. The trial court therefore found that Wu failed to establish a likelihood of success on the merits.

The determination of whether the remedial work was feasible and whether the same would be completed was within the discretion of the Board. As such, we cannot say the trial court abused its discretion with regard to finding substantial evidence to support the demolition order; and thus, Wu failed to show a probable right of recovery. Because we hold that the trial court did not abuse its discretion with regard to probable right to recovery, we need not address the remaining elements under *Butnaru.*

The following standards shall guide the code compliance director in his discretion in ordering a hearing to repair, vacate, secure and/or demolish a dangerous building and these standards shall be observed and applied by the hearing officers who comprise the dangerous structures determination board.

## CONCLUSION

Under an abuse of discretion standard, we cannot overrule the trial court's decision unless the court acted unreasonably or in an arbitrary manner, without reference to guiding principles. *Butnaru,* 84 S.W.3d at 211. We therefore hold that the record supports the trial court's finding that a reasonable basis exists upon which the Board could have made a determination of demolition. Because all findings and inferences of the Board are presumed to be supported by substantial evidence, we hold the trial court did not abuse its discretion in finding that Wu failed to show a probable right of recovery. We therefore affirm the trial court's denial of appellants' motion for temporary injunction.

(1) If the alleged dangerous building can be feasibly repaired or the condition remedied so that it will no longer exist in violation of the terms of this article, it shall first be ordered remedied or repaired by the hearing officers. Demolition shall be regarded as a remedy of last resort.