In The



Court of Appeals



Ninth District of Texas at Beaumont



 ______________________ 


 

NO. 09-07-206 CV


 ______________________


 

JOANNE BARNWELL, Appellant



V.



GREGORY D. EVERSOLE, Appellee






On Appeal from the 359th District Court


 Montgomery County, Texas


Trial Cause No. 07-03-03181 CV






MEMORANDUM OPINION 


 This appeal is from a temporary injunction against enforcement of a default judgment
pending a trial on the merits of a bill of review. Finding no abuse of discretion by the trial
court, we affirm the order. 

 Joanne Barnwell and husband Robert (Barney) Barnwell sued Gregory D. Eversole
for causes of action (1) relating to Eversole's construction of the Barnwell home. The district
court entered a default judgment in the Barnwells' favor. It is uncontroverted that Eversole
did not receive notice of the judgment. Appellate deadlines having passed, Eversole filed
a bill of review petition and a request for temporary injunction to prevent execution on the
default judgment. The trial court granted the temporary injunction. Only Joanne Barnwell
filed an interlocutory appeal. See Tex. Civ. Prac. & Rem. Code Ann. 51.014(a)(4) (Vernon
Supp. 2006).

 Raising four issues (2) on appeal, Joanne asserts the trial court erred in granting the
temporary injunction. She argues the following: Eversole failed to offer any evidence at the
temporary injunction hearing of a meritorious defense in the Barnwells' original suit;
Eversole's own fault and negligence caused the rendition of the final judgment; and Eversole
failed to show Joanne committed any fraud, accident, or wrongful act. Joanne also argues
the trial court erred in denying her motion for directed verdict at the temporary injunction
hearing. We address the issues together. 

 A temporary injunction's purpose is to preserve the status quo until a final hearing on
the merits. Butnaru v. Ford Motor Co., 84 S.W.3d 198, 204 (Tex. 2002). The applicant must
plead and prove three elements: (1) a cause of action against the defendant; (2) a probable
right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. 
Id. Whether to grant or deny a temporary injunction is within the trial court's sound
discretion. Id. A trial court may balance the equities of the parties and the resulting
hardships from issuance or denial of a temporary injunction. See NMTC Corp. v. Conarroe,
99 S.W.3d 865, 869 (Tex. App.--Beaumont 2003, no pet.). An abuse of discretion occurs
when the trial court misapplies the law to established facts, or when the evidence does not
reasonably support the conclusion that the applicant has a probable right of recovery. Wu v.
City of San Antonio, 216 S.W.3d 1, 4 (Tex. App.--San Antonio 2006, no pet.).

 The issues here focus on the second element of the temporary injunction test: whether
Eversole pleaded and proved a probable right to recovery in his bill of review. An applicant
need not establish that he will finally prevail in the litigation, but he must present "some
evidence which, under the applicable rules of law, establishes a probable right of recovery." 
In re Tex. Natural Res. Conserv. Comm'n, 85 S.W.3d 201, 204 (Tex. 2002) (quoting Camp
v. Shannon, 162 Tex. 515, 348 S.W.2d 517, 519 (1961)). When the trial court bases its
decision on conflicting evidence, generally there is no abuse of discretion. Davis v. Huey,
571 S.W.2d 859, 862 (Tex. 1978). The reviewing court draws all legitimate inferences from
the evidence in the light most favorable to the trial court's order granting a temporary
injunction. City of McAllen v. McAllen Police Officers Union, 221 S.W.3d 885, 893 (Tex.
App.--Corpus Christi 2007, pet. denied).

 In his bill of review, (3) Eversole asserted he had meritorious defenses -- accord and
satisfaction, estoppel, and payment -- in the Barnwells' suit but he was unable to present
them to the trial court "because of fraud." The crux of Joanne's argument is that there was
no payment to her, she did not agree to any settlement, and the defenses have no application
to her. She argues that estoppel does not apply, because Eversole produced no evidence of
any conduct by her that was inconsistent with her intention to prosecute her claims in the
underlying lawsuit against Eversole; and she asserts that his failure to comply with Rule 11
of the Texas Rules of Civil Procedure -- no writing signed by her and no agreement set out
in open court -- precludes him from enforcing any alleged settlement agreement with her. 

 At the temporary injunction hearing, Eversole testified he and Barney Barnwell had
been negotiating over the lawsuit for several months. The culmination of that negotiation
was Eversole's presentation to Mr. Barnwell of a $17,000 cashier's check (dated July 25,
2006) to settle the suit. On July 26, 2006, the day after Eversole submitted the $17,000 check
to Barney Barnwell, the trial court held a hearing on Eversole's attorney's motion to
withdraw. Present at that hearing were the visiting trial judge, Eversole, his attorney, and the
Barnwells' attorney. The following exchange occurred:

 [Eversole]: I was kind of wondering why we are even here today? 

 

 [The Court]: Because it's the court proceedings.

 

 [Eversole]: I know, but we had -- Barnwell, he took a cashier's check and said
we was done. I give it to him, and I'm back in court.

 . . . .


 [Eversole's Attorney]: Talk to [Barnwells' attorney] about that.


 [The Court]: All I see is what's right in front of me right this second. I don't
know what else is in the file.


 [Eversole]: That just happened and his client -- I thought we was done. I
mean, the lawsuit was supposed to have been dropped and Barney --

 

 [The Court]: I can't answer that question. I don't know anything about that.


 [Eversole's Attorney]: She's a visiting judge.

 

 [The Court]: I don't know what procedurally has gone on. All I have is a
motion to allow your attorney to withdraw. If you want to talk to [Barnwells'
attorney] for a second outside and find out what's going on, I would suggest
you do that."


Although the order is not in the record, apparently the trial court granted Eversole's
attorney's withdrawal motion. 

 Eversole presented additional evidence at the April 20, 2007, temporary injunction
hearing in his bill of review suit. He testified he spoke to the Barnwells' attorney after the
motion-to-withdraw hearing and told the attorney the suit had been settled. Eversole stated
the attorney acted as if he knew nothing about it and indicated he had not spoken to his client
for a week. Eversole explained that on July 27, 2006, the day after the motion-to-withdraw
hearing, he took a written agreement to Barnwell, who signed it in front of Eversole. Once
the checked cleared, Barney Barnwell gave Eversole a copy of the signed agreement. 

 Eversole described the events surrounding the letter agreement as follows:

 Q. [Eversole's Attorney]: Did Mr. Barnwell represent to you that he was acting
on behalf of Mrs. Barnwell?


 A. [Eversole]: Yes.


 Q. Pertaining to the settlement agreement?


 A. Yes. He didn't tell me no difference. And I didn't know the legal aspect
of Mrs. Barnwell or Mr. Barnwell. In all my dealings, it was always with
Barney.

 Q. Okay. And did Mr. Barnwell ever contact you between the time that --
after the settlement and after he gave you a copy of the settlement agreement,
did he ever contact you about the trial, say anything to you about the trial after
that, after that point?

 A. Nothing.

 Q. And did Mr. Barnwell tell you that he would take care of the lawsuit?

 A. Yes, he did.

 . . . .

 Q. Did [Barnwell's attorney] communicate with you after the hearing . . . on
the motion to withdraw as counsel[?]

 A. No, sir.


Eversole acknowledged he never talked to Joanne Barnwell about the settlement, and he
never obtained a written agreement from her.

 The letter agreement, addressed to Robert Barnwell, states in part, "As you know, on
July 25, 2006, I provided and you accepted a Texas Community Bank cashiers check . . . in
the amount of $17,000. It is my understanding, based on this payment, we reached a
settlement." The letter further states, "This letter will confirm settlement of the above
lawsuit. . . . Because we reached a settlement, in exchange, you agreed to dismiss the lawsuit,
and to release and hold me harmless from any and all past, present, or future claims
concerning the above lawsuit or your residence . . ." Barnwell's signature appears by the
phrase "Agreed To" at the letter's conclusion. (4)

 Two months after the motion-to-withdraw hearing, and after the cashing of the
$17,000 check, the Barnwells took a default judgment against Eversole. He did not appear
at the default judgment hearing.

 Eversole testified he first knew of the Barnwells' default judgment against him on
March 13, 2007, when an attempt was made to execute on the judgment. Eversole stated he
was "totally shocked," "[b]ecause I had settled, you know, with Mr. Barnwell last year and
thought everything was done. . . ." "I thought it was over with." Even after his own attorney
withdrew, Eversole stated the Barnwells' attorney never contacted him. There was no
mention of a settlement at the default judgment hearing. 

 The record contains some evidence of the existence of an agreement that the lawsuit
was settled, as well as evidence supporting claims of estoppel, accord and satisfaction, and
payment. There is also evidence of a course of conduct preventing Eversole from asserting
his defenses. (5) Both the Barnwells sued Eversole on a contract to which Joanne and Barney
were both parties. Their causes of action were the same; their names both appeared in the
style on the default judgment; and the damages award was not set out separately for each of
them. Barney Barnwell testified that he was aware that his attorney had offered a settlement
of $17,000. Eversole testified that Mr. Barnwell took the $17,000 check and told Eversole
"we was done[,]" and the suit would be taken care of. The $17,000 check was cashed. The
Barnwells' attorney knew from Eversole's statements during the motion-to-withdraw hearing
that Eversole had given a check to Barney, and that Eversole stated Barney indicated the case
would be dropped. Eversole testified he had dealt only with Barney, not with Joanne. 
Eversole believed that when Barney accepted and cashed the $17,000 check, signed the letter
agreement indicating settlement and release, and represented the case would be dropped,
Barney was settling the entire case. The nature of Eversole's dealings with Barney is some
evidence of Barney's apparent authority or agency to act for his wife.

 In contrast to Eversole's testimony, Barney testified he never signed the letter
agreement. Joanne testified she frequently consulted with Eversole both at the office and
at the house during the construction phase, although she never talked with him after the suit
was filed. There was testimony from handwriting experts: Eversole's expert testified
Barney's signature was on the letter agreement; Joanne's expert testified she could not
determine the authenticity of the signature. Presented with conflicting testimony, the fact-finder at the temporary injunction hearing was free to believe one witness over another. See
Naguib v. Naguib, 137 S.W.3d 367, 377 (Tex. App.--Dallas 2004, pet. denied). 

 Joanne Barnwell argues Eversole's own fault and negligence caused the rendition of
the final judgment in the underlying suit. She points to Eversole's failure to sign or file the
alleged settlement agreement; failure to obtain her or her counsel's signatures on the
document; and Eversole's failure to appear for the September 8, 2006, pre-trial conference
and the September 18, 2006, trial setting, even though he knew of the dates. 

 As noted above, Eversole proffered evidence he believed the dispute had settled. He
indicated he had dealt only with Barney and believed Barney was, in effect, speaking for both
Barney and Joanne. Eversole testified Barney cashed the check and represented he would
take care of the lawsuit. See Griffith v. Conard, 536 S.W.2d 658, 660-61 (Tex. Civ. App.--Corpus Christi 1976, no writ) (Bill of review petitioner was induced to refrain from pursuing
his meritorious defense by false promises of compromise or settlement made by opposite
party.). The judge heard evidence from which she could reasonably conclude the Barnwells'
attorney knew Eversole believed the lawsuit to be settled. The Barnwells' attorney knew
Eversole's attorney was off the case. He also knew a visiting judge had presided over the
earlier hearing. When the presiding judge at the default judgment hearing asked the
Barnwells' attorney if he had "heard from [Eversole] at all[,]" the attorney responded "No,
I have not, your Honor." When the Court asked whether "notice of a date" should be sent,
the attorney said no. Joanne and Barney took a default judgment against Eversole, and
proved up that $17,000 payment as a credit on their damages, not as a settlement. The court
at the default judgment hearing was not informed Eversole paid the money as part of what
was represented to him as a settlement. From the evidence, the trial court at the temporary
injunction hearing reasonably could conclude the default judgment was not the result of
Eversole's fault or negligence. 

 Eversole asserts the fraud was in the taking of a default judgment against him even
though the lawsuit purportedly had settled and payment had been made. Eversole contends
the Barnwells' attorney participated by "representing to the court that the payment made by
[Eversole] was a credit only, knowing [Eversole] had made the payment believing it to be in
full settlement of the lawsuit." We have set out evidence indicating that Eversole may have
been prevented from asserting his defenses by the conduct of the opposing party. See
generally King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 752 (Tex. 2003). There is some
evidence to support the trial court's recognition of a probable right of relief in the bill of
review proceeding. 

 A temporary injunction is issued "to prevent only harm that cannot be prevented after
a final determination on the merits." NMTC Corp. v. Conarroe, 99 S.W.3d at 867-68. A trial
court balances competing equities in exercising its injunction power. Id. at 868. As part of
its weighing of the equities, a court considering a temporary injunction may balance the
probable harm to the plaintiff if a temporary injunction is erroneously denied with the
probable harm to the defendant if a temporary injunction is erroneously granted. Id. In
granting the temporary injunction under the circumstances here, the trial court did not act
outside the bounds of reasonable discretion. Issues one, two, four, and five are overruled.

 We affirm the trial court's order granting the temporary injunction. 

 AFFIRMED. 

 DAVID GAULTNEY

 Justice

Submitted on July 12, 2007

Opinion Delivered August 30, 2007


Before Gaultney, Kreger, and Horton, JJ.
1. The Barnwells' causes of action were for DTPA violations, common law fraud,
statutory real estate fraud, breach of contract, and negligent misrepresentation.
2. Joanne Barnwell withdrew issue three.
3. Eversole's cause of action is a bill of review which requires proof of three elements:
(1) a meritorious defense to the underlying cause of action, (2) which he was prevented from
making by the fraud, accident, or wrongful act of the opposing party or official mistake, (3)
unmixed with any fault or negligence on his own part. See Caldwell v. Barnes, 154 S.W.3d
93, 96 (Tex. 2004). 
4. Eversole's typed name is below the salutation; he did not sign the document. 
5. Eversole's defenses do not necessarily depend upon proof of compliance with the
Rule 11 filing requirement. See generally Tex. R. Civ. P. 11. The Supreme Court has held
that Rule 11 requires only that the writing be filed before an agreement is sought to be
enforced. See Padilla v. La France, 907 S.W.2d 454, 461 (Tex. 1995). Eversole essentially
asserts he was deprived of the opportunity to enforce the agreement.