*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



★ ★ ★  ★ ★ ★

# MEMORANDUM OPINION

No. 04-08-00067-CV

**AUBURN INVESTMENTS, INC.**,
Appellant

v.

**LYDA SWINERTON BUILDERS, INC.** and **NSHE TX GAINSVILLE, LLC**,
Appellees

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2006-CI-11003
Honorable Karen Pozza, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:      Catherine Stone, Justice
              Sandee Bryan Marion, Justice
              Steven C. Hilbig, Justice

Delivered and Filed:   July 30, 2008

AFFIRMED

Appellant Auburn Investments, Inc. appeals from the trial court's denial of its request for a temporary injunction against Lyda Swinerton Builders, Inc. and NSHE TX Gainsville, LLC. Because we cannot conclude the trial court abused its discretion in denying the temporary injunction, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Auburn Investments, Inc. ("Auburn") owns the Drury Inn and Suites ("Drury") in downtown San Antonio. Lyda Swinteron Builders, Inc. ("Lyda") is constructing a Marriott Courtyard Hotel, next door to the Drury, for appellees NSHE TX Gainsville, LLC ("NSHE TX"). Some portions of the Drury and the Marriott are separated by just seven feet. The construction has created dust, debris, and noise.

Auburn sued Lyda and NSHE TX in July 2006 under theories of trespass, tortious interference with prospective relations, and nuisance. On December 5, 2007, after the construction phase had begun, Auburn filed its Amended Application for Temporary Injunction, alleging trespass, loss of business goodwill, and nuisance. The application asked the court to: 1) halt construction of the Marriot until actions are taken to stop the trespass onto Auburn's property by "persons, equipment, vehicles, debris, tower cranes, [and] construction materials"; 2) limit construction to the hours between 8 a.m. and 6 p.m.; and 3) compel compliance with certain standards of the federal Occupational Safety and Health Administration that require construction sites to prevent falling debris outside its exterior walls.

On December 10, 2007, prior to the injunction hearing, the parties signed a Rule 11 agreement that, among other things, called for Lyda to: 1) restrict its work "that generates any significant level of noise" to the hours between 8 a.m. and 10:00 p.m. each day; 2) direct lighting from a tower crane onto the construction site and erect screens to prevent light from shining onto the Auburn's property; and 3) erect eight-foot-tall screens around concrete pours to prevent concrete debris from migrating to Auburn's property.

The agreement called for Drury's owner, Rick Drury, and Lyda's construction manager, Dan Wetting, to jointly observe a concrete pour on December 11, 2007, in order to identify and resolve

problems.  Also, the parties agreed the terms of the Rule 11 agreement would have no precedential value and would not be used as evidence in court or as the basis for seeking similar relief in court.

On January 14, 2008, the trial court proceeded with the remaining issues in Auburn's application for a temporary injunction concerning dust and debris.  In its opening statement, Auburn asked for "injunctive language that prohibits [Lyda] from having debris land on our property."  Testimony and exhibits, which included photographs and construction materials, focused on the issue of dust and debris.  According to evidence produced at the hearing to consider the temporary injunction, Auburn has refunded money to perhaps ten customers who were annoyed by the construction next door, in addition to offering credits or discounts to others.  At the hearing, Rick Drury testified he has personally picked up nails, lumber, and bits of concrete that have fallen from the neighboring construction project onto the hotel property.  He testified two cars had been splattered with concrete, while a security guard testified she had been struck, but not injured, by a small piece of falling debris.  Drury also testified that he worried the hotel would lose customers and long-term goodwill among guests as the construction continues.

The trial court denied the temporary injunction, and this accelerated appeal followed.

## STANDARD OF REVIEW

A trial court has broad discretion in deciding whether to grant or deny a temporary injunction. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *Wu v. City of San Antonio*, 216 S.W.3d 1, 4 (Tex. App.—San Antonio 2006, no pet.).  We review the grant or denial of a temporary injunction for a clear abuse of discretion without addressing the merits of the underlying case. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993); *Ireland v. Franklin*, 950 S.W.2d 155, 157 (Tex. App.—San Antonio 1997, no writ).  An appellate court will uphold the trial court's order unless the

trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *Butnaru*, 84 S.W.3d at 204. In an appeal from an order granting or denying a request for a temporary injunction, appellate review is confined to the validity of the order that grants or denies the injunctive relief. *Universal Health Servs., Inc. v. Thompson*, 24 S.W.3d 570, 576 (Tex. App.—Austin 2000, no pet.). We may neither substitute our judgment for that of the trial court nor consider the merits of the lawsuit. *Id*. Instead, we view the evidence in the light most favorable to the trial court's order, indulging every reasonable inference in its favor, and determine whether the order was so arbitrary as to exceed the bounds of reasonable discretion. *Id*. When, as here, no findings of fact or conclusions of law are requested or filed, we must uphold the trial court's judgment on any legal theory supported by the record. *See, e.g., Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978); *Seaman v. Seaman*, 425 S.W.2d 339, 341 (Tex. 1968).

## DISCUSSION

To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru*, 84 S.W.3d at 204; *City of San Antonio v. Vakey*, 123 S.W.3d 497, 499 (Tex. App.—San Antonio 2003, no pet.). An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard. *Butnaru*, 84 S.W.3d at 204. In its Amended Application for Temporary Injunction, Auburn complained it had suffered — and would continue to suffer — probable, imminent, and irreparable injury due to the loss of goodwill and the risk of injury to its guests or employees by falling debris.

**1. Loss of goodwill**

Goodwill is property and, as such, its owner may recover for damages to it. *Texas & P. Ry. Co. v. Mercer*, 90 S.W.2d 557, 560 (1936). Goodwill is generally understood to mean the advantages that accrue to a business on account of its name, location, reputation, and success. *Swinnea v. ERI Consulting Eng'g, Inc.*, 236 S.W.3d 825, 837 (Tex. App.—Tyler 2007, pet. filed); *Taormina v. Culicchia*, 355 S.W.2d 569, 574 (Tex. Civ. App.—El Paso 1962, writ ref'd n.r.e.). The value of the goodwill "depends upon the fixed and favorable consideration of customers arising from an established and well-known and well-conducted business." *Taormina*, 355 S.W.2d at 574.

Here, Oscar Cepeda, general manager of the Drury hotel, testified that some customers had complained about noise or debris. Cepeda claimed the hotel's occupancy rate had declined due to the construction, to which Lyda objected on the ground that Auburn had not established a foundation for its assertion. The court sustained Lyda's objection and rejected Cepeda's testimony as speculation, stating:

> If [Cepeda] wants to say people have come and complained and left, I understand that. [H]e can testify to that. [I]f he wants to say occupancy was this percent one year and occupancy was this percent another year . . . it would require significant analysis . . . to say what's causing that. I think you need Chamber of Commerce numbers and visitor numbers and sporting events that happened this year . . . . And so that's my concern with blaming that occupancy rate decrease on this construction.

Auburn argues that its loss of customers is incalculable goodwill because a guest who suffers a bad experience will perhaps choose not to stay in a Drury property again, and will likely tell other persons about his bad experience, causing a further loss of revenue. Although the loss of business goodwill may be sufficient to show irreparable injury for purposes of a temporary injunction, such a loss cannot be left to speculation because, at a minimum, opinions must be based on objective

facts, figures or data from which the loss of goodwill may be ascertained. *See Hicks Oil & Butane Co. v. Garza,* No. 04-05-00836-CV, 2006 WL 2263896, at *2 (Tex. App.—San Antonio August 9, 2006, no pet.) (mem. op, not designated for publication) (quoting *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 504 (Tex 2001)). Here, after the trial court stated its concern, Auburn did not connect the decline in occupancy rate to the dust and debris. Therefore, the trial court had no objective facts, figures or data from which the loss of goodwill could be ascertained.

**2. Risk of injury to guests or employees**

Auburn claimed its guests and employees are in danger of imminent injury by falling debris or some similar construction-related accident. Imminent injury must be proven to obtain injunctive relief. *Butnaru*, 84 S.W.3d at 204; *City of San Antonio*, 123 S.W.3d at 501. The purpose of injunctive relief is to halt wrongful acts that are threatened or in the course of accomplishment, rather than to grant relief against past actionable wrongs or to prevent commission of wrongs not imminently threatened. *See Tex. Health Care Info. Council v. Seton Health Plan, Inc.*, 94 S.W.3d 841, 853 (Tex. App.—Austin 2002, pet. denied). Injunctive relief is not proper, however, when the party seeking the injunction has mere fear or apprehension of the possibility of injury. *Harbor Perfusion, Inc. v. Floyd*, 45 S.W.3d 713, 716 (Tex. App.—Corpus Christi 2001, no pet.). Here, a security guard at the Drury testified she was struck by a small piece of debris she said fell from the construction site. Fortunately, she was not injured. Also, Auburn presented an array of construction debris it said it collected from its property, consisting mostly of nails and other small items, as well as a thirteen-foot two-by-four covered with nails, wire, and concrete.

Lyda challenged the veracity of Auburn's claims of imminent harm. Dan Wettig, Lyda's construction manager, testified in a lengthy narrative on direct examination that his company had

tried without success to gain the cooperation of Auburn. Wettig's testimony that his personnel were not permitted on the Drury property to observe the problem from Auburn's perspective was not challenged. Auburn also did not dispute Wettig's testimony that his own personnel checked into the Drury hotel in order to gain access to the property, but when they were discovered, they were asked to leave. Wettig expressed doubt that the thirteen-foot two-by-four had actually fallen from the heights of the construction onto the Drury property. Similarly, Marriott property owner Richard Finvarb testified that Auburn, while alleging fear of imminent injury to its workers or guests, was more interested in collecting debris for trial exhibits instead of showing Lyda problems as they occurred so that the problems could be corrected immediately. Finvarb testified he would have preferred to work cooperatively with Auburn.

Considering the evidence in the light most favorable to the trial court's order, we conclude Auburn's concern about the danger of imminent injury from falling debris or some similar construction-related accident is based on a "fear or apprehension of the possibility of injury."

## CONCLUSION

We cannot conclude, based on this record, that the court abused its discretion in denying the injunction. Therefore, we overrule Auburn's issue on appeal, and affirm the trial court's order denying injunctive relief.

Sandee Bryan Marion, Justice